1  LAURENCE PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  TYLER NEWBY (CSB No. 205790)
   tnewby@fenwick.com
3  MOLLY MELCHER (CSB No. 272950)
   mmelcher@fenwick.com
4  CIARA N. MCHALE (CSB No. 293308)
   cmittan@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:    415.875.2300
7  Facsimile:    415.281.1350

8  Attorneys for Defendant Symantec Corporation

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14 MONTGOMERY BEYER, and LINDA            Case No.: 3:18-cv-02006-EMC
   CHESLOW, Individually and on Behalf of all
15 Others Similarly Situated,              **DEFENDANT SYMANTEC
                                           CORPORATION'S NOTICE OF
16                    Plaintiff,           MOTION AND MOTION TO DISMISS
                                           PLAINTIFFS' FIRST AMENDED
17         v.                              COMPLAINT**

18 SYMANTEC CORPORATION,                   Date:      February 14, 2019
                                           Time:      1:30 p.m.
19                    Defendant.           Dept.:     Courtroom 5, 17th Floor
                                           Judge:     Hon. Edward M. Chen
20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 14, 2019, or as soon thereafter as available, in the courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, Courtroom 5, 17th Floor, San Francisco, California, 94102, Defendant Symantec Corporation ("Symantec") will and hereby does move for an order dismissing Plaintiffs' First Amended Class Action Complaint (Dkt. No. 52) ("FAC") under Rules 12(b)(1), 12(b)(6) of the Federal Rules of Civil Procedure and Article III of the United States Constitution.

All Counts of the FAC should be dismissed because Plaintiffs fail to satisfy the standing requirement of Article III of the United States Constitution.  Plaintiffs' claims under the Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law should be dismissed because Plaintiffs fail to plead with particularity the facts and circumstances of the alleged fraudulent conduct as required under Rule 9(b).  All Counts of the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, as each purported cause of action fails to plead facts constituting essential elements of that claim.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Molly Melcher, Request for Judicial Notice, the pleadings and papers on file in this action, any other such matters up on which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.


Dated:   December 21, 2018                      FENWICK & WEST LLP


                                                By: */s/ Laurence F. Pulgram*
                                                    Laurence F. Pulgram

                                                Attorneys for Defendant Symantec Corporation

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... iv

I.    ISSUES TO BE DECIDED ................................................................................... 1

II.   INTRODUCTION ................................................................................................. 1

III.  FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    A.   Procedural Background .............................................................................. 2

    B.   Allegations of the FAC ............................................................................. 3

        1.   Plaintiff Beyer's Alleged Purchases ............................................. 3

        2.   Plaintiff Cheslow's Alleged Purchases ........................................ 4

        3.   Symantec's License Agreements ................................................... 5

        4.   Plaintiffs' Claims Regarding the Alleged Defect .......................... 6

ARGUMENT ................................................................................................................ 7

I.    PLAINTIFFS LACK ARTICLE III STANDING .............................................. 7

    A.   Legal Standard under Fed. R. Civ. P. 12(b)(1) and Article III .................. 7

    B.   Plaintiffs Cannot Establish Article III Standing Based on Their
       "Overpayment" Theory ............................................................................. 8

        1.   Plaintiffs' Allegations Do Not Substantiate Concrete and
           Actual Injury ................................................................................ 8

        2.   Plaintiffs Must Allege "Something More" Than Mere
           Overpayment ................................................................................ 9

II.   PLAINTIFFS' FRAUD CLAIMS UNDER THE CLRA, FAL, AND
    UCL SHOULD BE DISMISSED FOR FAILURE TO STATE A
    CLAIM ............................................................................................................... 12

    A.   Legal Standard under Fed. R. Civ. P. 12(b)(6) ...................................... 12

    B.   Fed. R. Civ. P. 9(b)'s Particularity Requirement ................................... 12

    C.   Plaintiffs Fail to Identify Any False, Actionable, Non-Puffing
       Statements upon Which They Relied ...................................................... 13

        1.   The Statements Plaintiffs Identify Are Non-Actionable
           Puffery ....................................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS
### (Continued)

**Page**

2.   There Are No Allegations Establishing Falsity ............................ 17

D.   Symantec Did Not Have a Duty to Disclose Any Alleged
Vulnerability ......................................................................................... 18

III.   PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM AS A MATTER OF LAW ................... 21

A.   Plaintiffs' SBA Claim Should be Dismissed for Failure to State
a Claim ............................................................................................. 21

1.   Plaintiffs Fail to Plead that the Affected Products Were
Not Reasonably Suited for Ordinary Use ..................................... 21

2.   Plaintiffs Fail to Allege that They Purchased the
Accused Products in California ...................................................... 22

B.   Plaintiffs' UCL Claim Should be Dismissed for Failure to State
a Claim ............................................................................................. 24

C.   Plaintiffs Fail to State a Claim for Quasi-Contract/Unjust
Enrichment ....................................................................................... 25

CONCLUSION ................................................................................................. 25

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page(s)</u>**

3

4  **CASES**

5  *3226701 Canada, Inc. v. Qualcomm, Inc.*,
No. 15CV2678-MMA (WVG), 2017 WL 971846 (S.D. Cal. Jan. 27, 2017)...........................15

6
*Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*,
7  No. 11-CV-448-SM, 2012 WL 1801742 (D.N.H. May 17, 2012)...........................................15

8  *Apodaca v. Whirlpool Corp*,
No. SACV 13-00725 JVS (ANx), 2013 WL 6477821 (C.D. Cal. Nov. 8, 2018)....................21
9
*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*,
10  378 F. App'x 652 (9th Cir. 2010) ...............................................................................................14

11  *Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................12, 20
12
*Bell Atl. Corp. v. Twombly*,
13  550 U.S. 544 (2007) ...................................................................................................................12

14  *Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)........................................................................................................9
15
*Burdt v. Whirlpool Corp.*,
16  No. C 15-01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ........................................21

17  *Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ...........1, 10, 11
18
*Calif. State Elecs. Ass'n v. Zeos Int'l. Ltd.*,
19  41 Cal. App. 4th 1270 (1996) .....................................................................................................23

20  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...............................................................................................................24
21
*Coleman-Anacleto v. Samsung Elecs. Am., Inc*,
22  No. 16-CV-02941-LHK, 2017 WL 86033 (N.D. Cal. Jan. 10, 2017)........................................24

23  *Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) .........................................................................................18, 19, 20
24
*Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*,
25  911 F.2d 242 (9th Cir. 1990).......................................................................................................14

26  *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
No. 14-CV-02349-TEH, 2015 WL 1548872 (N.D. Cal. Apr. 7, 2015) .....................................14
27
*Ehrlich v. BMW of N. Am., LLC*,
28  801 F. Supp. 2d 908 (C.D. Cal. 2010) ........................................................................................21

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ...............................................................................13

*Gammel v. Hewlett-Packard Co.*,
   905 F. Supp. 2d 1052 (C.D. Cal. 2012) ............................................................................14

*Gertz v. Toyota Motor Corp.*,
   No. CV 10-1089 PSG, 2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) .................................21

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F. 3d 1112 (9th Cir. 2014).............................................................................................12

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ..............................................................................................................8

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .............................................................................24

*Haskins v. Symantec Corp.*,
   No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014),
   *aff'd*, 654 F. App'x 338 (9th Cir. 2016)......................................................................12, 25

*Hauck v. Advanced Micro Devices, Inc.*,
   No. 18-CV-00447-LHK, 2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) .............................22

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)..............................................................................................11

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018)................. *passim*

*Hughes v. Panasonic Consumer Elecs. Co.*,
   No. 10-846 (SDW), 2011 WL 2976839 (D.N.J. July 21, 2011) .............................................15

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. 2010),
   *aff'd*, 464 F. App'x 651 (9th Cir. 2011)................................................................................24

*In re Apple Inc. Device Performance Litig.*,
   No. 18-MD-02827-EJD, 2018 WL 4772311 (N.D. Cal. Oct. 1, 2018)................14, 17, 18, 21

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018).....................................25

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
   No. 08 Civ. 11278 (DLC), 2009 WL 4823923 (S.D.N.Y. Dec. 14, 2009) .............................16

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) (Chen, J.)..............................................................23

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**
(Continued)

2

3

**Page(s)**

4

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) (Chen, J.)..........................................8, 10, 11

5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    No. 2:16-cv-06509 WHW-CLW, 2018 WL 3772675, at *23
6   (D.N.J. Aug. 8, 2018).........................................................................................16

7

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
8   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .............................................................15

9
*In re Deutsche Bank AG Sec. Litig.*,
    No. 09 CV 1714 (DAB), 2016 WL 4083429 (S.D.N.Y. July 25, 2016)................15

10

*In re iPhone 4S Consumer Litig.*,
11   No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014),
    *aff'd*, 637 F. App'x 414 (9th Cir. 2016)..............................................................17

12

*In re Nexus 6P Prods. Liab. Litig.*,
13   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................23

14
*In re Seagate Tech. LLC Litig.*,
    No. 16-cv-0523-JCS, 2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) ...................23

15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
16   No. MDL 2672 CRB (JSC), 2018 WL 4777134 (N.D. Cal. Oct. 3, 2018).............11

17

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
    No. C-07-04178-JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ....................14

18

*Intertape Polymer Corp. v. Inspired Techs., Inc.*,
19   725 F. Supp. 2d 1319 (M.D. Fla. 2010) ..............................................................15

20
*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).......................................................................12, 20

21

*Kowalsky v. Hewlett-Packard Co.*,
22   771 F. Supp. 2d 1138 (N.D. Cal. 2010), *vacated in part on other grounds on*
    *reconsideration*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011)....................................23

23

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
24   114 F. Supp. 3d 852 (N.D. Cal. 2015) ......................................................14, 15, 16

25
*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997). MTD Order .........................................................19

26

*Lujan v. Defenders of Wildlife*,
27   504 U.S. 555 (1992)..............................................................................................7

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Marcus v. Apple Inc.*,
  No. C 14-03824 WHA, 2015 WL 1743381 (N.D. Cal. Apr. 16, 2015).................................21

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)...........................................................................................8

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)............................................................................................8

*McVicar v. Goodman Glob., Inc.*,
  No. SACV 13-1223-DOC, 2014 WL 12573991 (C.D. Cal. Aug. 6, 2014) ...........................15

*Newcal Indus., Inc. v. Nikon Office Sols.*,
  513 F.3d 1038 (9th Cir. 2008)....................................................................................13, 16

*Papasan v. Domestic Corp.*,
  No. 16-cv-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) ...........................10, 11

*Prager Univ. v. Google LLC*,
  No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ..............................16

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................................................13

*Richardson v. Reliance Nat'l Indemn. Co.*,
  No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) .......................................12

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (2015) ..............................................................................18, 19, 20

*Singh v. Google Inc.*,
  No. 16-CV-03734-BLF, 2017 WL 2404986 (N.D. Cal. June 2, 2017) ..................................17

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
  88 F.3d 780 (9th Cir. 1996).............................................................................................12

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016) ......................................................................................................7

*Swearingen v. Healthy Beverage, LLC*,
  No. 13-CV-04385-EMC, 2017 WL 1650552 (N.D. Cal. May 2, 2017)
  (Chen, J.).......................................................................................................................25

*Taragan v. Nissan N. Am., Inc.*,
  No. C 09-3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ...................................22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).........................................................................................12

FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .................................................................................18, 20, 21

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ...................................................................................2, 18, 21

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
214 F. Supp. 3d 179 (E.D.N.Y. 2016), *reconsideration denied*,
No. 15-CV-3015(FB)(CLP), 2017 WL 4326503 (E.D.N.Y. Sept. 28, 2017) ..........................15

**RULES**

Fed. R. Civ. P. 8(a) ...............................................................................................................20

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................7

Fed. R. Civ. P. 12(b)(6) ..................................................................................................12, 13

**OTHER AUTHORITIES**

U.S. Constitution, art. III ............................................................................................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    <u>ISSUES TO BE DECIDED</u>**

3

      1.     Whether Plaintiffs have alleged an "injury in fact" sufficient to establish standing

4

under Article III of the U.S. Constitution?

5

      2.     Whether Plaintiffs have stated with particularity the facts and circumstances of the

6

alleged fraudulent conduct.

7

      3.     Whether the First Amended Complaint (Dkt. No. 52, "FAC") states a claim upon

8

which relief may be granted.

9

**II.    <u>INTRODUCTION</u>**

10

      Plaintiffs' FAC is a dramatic overreach.  What actual ill befell Plaintiffs Beyer or

11

Cheslow, or the class they purport to represent, as a result of Symantec's alleged actions?  *None.*

12

Plaintiffs purchased security software from Symantec and used it successfully, as advertised.  It

13

protected them against intrusion, without any issue, giving them exactly the result they paid for.

14

Indeed, both Plaintiffs renewed their purchases repeatedly.  Nor is there an allegation of intrusion,

15

lack of performance or other harm for any class member.  Software bugs happen.  Vulnerabilities

16

occur.  Sometimes they become publicly known.  Sometimes they are exploited.  But there is no

17

allegation they were here.  And there is no ongoing risk of future harm.  As the FAC admits,

18

when Symantec was alerted to these vulnerabilities, it fixed them in 2016, before they were ever

19

publicly known or exploited.

20

      For these reasons, Plaintiffs' allegations that they "would have paid less" if they had

21

known of the potential vulnerability is sheer conjecture.  Their FAC lacks the "something more,"

22

by way of actual injury essential to establish Article III standing to complain about a product

23

defect that never manifested—much less to launch a putative class action spanning eleven years

24

and dozens of products.  *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal.

25

2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ("Where economic loss is predicated solely on

26

how a product functions . . . something more is required than simply alleging an overpayment for

27

a 'defective' product.").  This Court's inquiry can stop with Plaintiffs' lack of standing, an issue

28

not addressed on the prior Motion.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Plaintiffs' FAC suffers from several other fatal shortcomings as well.  Plaintiffs'

2  Consumer Legal Remedies Act, False Advertising Law, and Unfair Competitions Law claims

3  sound in fraud.  Yet Plaintiffs fail to plead with particularity any actionable, non-puffing

4  misrepresentation upon which they relied.  Nor can Plaintiff establish that Symantec had a duty to

5  disclose the alleged potential vulnerabilities.  The law imposes no duty to provide software free of

6  any potential vulnerabilities—especially when they are corrected before they manifest.  Here,

7  Plaintiffs cannot establish that the alleged vulnerabilities had any actual impact on the "central

8  functionality" of the software, much less rendered it incapable of use.  If a consumer could hold a

9  manufacturer liable by alleging only that a product could have been designed better, where there

10 was no malfunction due to the alleged defect, no resulting safety issue, and no injury caused by

11 the product, product defect litigation would become as "widespread as manufacturing itself."

12 *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).

13    Plaintiffs' Song-Beverly Warranty Act claim fails because Plaintiffs fail to allege that: (1)

14 the software was not reasonably suited for ordinary use; and (2) they purchased the software in

15 California.  Further, Plaintiffs cannot establish that Symantec engaged in any "unfair" business

16 practices under the UCL because the alleged "unfair" conduct overlaps entirely with their

17 untenable claims of "fraudulent" and "unlawful conduct."  Plaintiffs' unjust enrichment claim is

18 duplicative of their other claims and similarly fails.

19    Symantec respectfully submits that Plaintiffs' FAC should be dismissed in its entirety.

20 **III.    FACTUAL AND PROCEDURAL BACKGROUND**

21    **A.    Procedural Background**

22    Plaintiff Beyer's original Complaint alleged Symantec misrepresented certain security

23 products and failed to disclose alleged software vulnerabilities first reported by Google's Project

24 Zero ("PZ") in 2016.  *See* Dkt. No. 1 ("Compl.").  Plaintiff asserted five claims against Symantec:

25 (i) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); (ii)

26 violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* ("SBA");

27 (iii) violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL");

28 (iv) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL");

and (v) a claim for "Quasi-Contract/Unjust Enrichment." *Id.* at ¶¶ 51-96.  Symantec moved to dismiss ("MTD").  *See* Dkt. No. 17.

On September 21, 2018, the Court dismissed without prejudice Plaintiff's SBA claim as well as Plaintiff's CLRA, FAL, UCL, and unjust enrichment claims with respect to Plaintiff's alleged Third Software purchase, which occurred at Best Buy.  Dkt. No. 39 ("MTD Order") at 2. The Court denied Symantec's motion to dismiss Plaintiff's other claims relating to Plaintiff's alleged Second Software purchase, which occurred online.  *Id.*  Symantec sought leave to file a motion for reconsideration on two issues addressed in the Court's MTD Order: (1) whether Symantec's claim of "industry leading" software was non-actionable puffery; and (2) whether the alleged vulnerability in the Affected Products constituted a "physical defect central to the functioning of the product" obliging Symantec to disclose it.  Dkt. No. 43 at 1-2.  The Court granted Symantec leave to raise these issues in its motion to dismiss the FAC.  Dkt. No. 50.

## B.   Allegations of the FAC

Symantec, headquartered in Mountain View, California, provides security, storage, and systems management to consumers, small businesses, and large global organizations through its antivirus, data management utility and enterprise software products.  FAC ¶ 12.

Plaintiff Beyer, a Michigan resident when he filed the initial Complaint, now resides in Kentucky.  *Id.* at ¶ 10. The FAC added Plaintiff, Linda Cheslow, who alleges she now lives in California, though not where she lived at the time of her purchases.  *Id.* ¶ 11. The FAC reasserts the same claims from the Complaint, this time on behalf of both Plaintiffs.  *Id.*

### 1.   Plaintiff Beyer's Alleged Purchases

Mr. Beyer alleges that, in March 2007, he purchased a Dell desktop computer equipped with the Norton 360 software ("Beyer First Software").  *Id.* at ¶ 21.  Mr. Beyer does not seek recovery for the Beyer First Software.  *Id.*

Next, Mr. Beyer claims that when the software expired—and apparently valuing its performance—he purchased an upgrade in March 2009 to Norton 360 Premier, v. 2.0 through Symantec's website ("Second Software").  *Id.* at ¶ 22.  He claims that prior to making his purchase he reviewed the product page on Symantec's website.  *Id.*  Mr. Beyer alleges Symantec

represented that Norton 360 Premier, v. 2.0 (1) provides "Award-Winning Protection"; (2) "'defends . . . against a broad range of online threats' through key technologies, including antivirus, antispyware, rootkit detection, and automatic updates"; and (3) "provides 'enhanced performance' through 'industry leading virus, spyware and firewall protection,' as well as '[a]utomatic updates' that '[i]nclude[] protection updates and new product features as available throughout the renewable service period.'" *Id.* Mr. Beyer also claims that Symantec "highlighted" its "Industry-Leading Layered Security feature," which "helps protect . . . against advanced threats," citing the "What's New and Improved" page. *Id.* Mr. Beyer alleges that he purchased the Beyer Second Software "in reliance" on each of these representations. *Id.*

Mr. Beyer alleges that same year he bought another Norton 360 Premier, v. 2.0 at a Best Buy store ("Beyer Third Software"). As in the original Complaint, the FAC claims he reviewed the product page on the Best Buy website and relied on "similar representations" there that the Beyer Third Software "[p]rotects against viruses, spyware, hackers, rootkits, identity theft, phishing scams and fraudulent Web sites." FAC ¶ 23. The FAC adds a new allegation that Mr. Beyer reviewed the same product page on Symantec's website for his Best Buy purchase as for his prior online purchase. *Id.* And it adds an allegation that he reviewed and relied upon "the various comparable representations and statements on the software's packaging and box in connection with his purchase," including "representations that the Beyer Third Software '[r]emove[s] dangerous threats from files you download' and provides 'Automatic Updates,' including 'security updates and new product features.'" *Id.*

Finally, Mr. Beyer alleges that on March 5, 2010, he again renewed the March 2009 software ("Beyer Fourth Software"), along with a PC Jump Start Service program ("Beyer Fifth Software"), both through Symantec's website. *Id.* at ¶ 24. He alleges that he requested and received a refund for these purchases and does not seek recovery for them here. *Id.*

### 2.   Plaintiff Cheslow's Alleged Purchases

Ms. Cheslow alleges that, on June 7, 2009, from an unnamed location, she purchased Norton Internet Security software through Symantec's website ("Cheslow First Software"). FAC ¶ 25. She alleges that prior to making her purchase she reviewed the product page on Symantec's

FENWICK & WEST LLP
ATTORNEYS AT LAW

website.  *Id.*  There, she alleges, Symantec represented that the software: (1) provides "Award-winning Protection" as noted by certain consumer technology publications; (2) "'[s]tops viruses, worms, spyware, bots, and more' and '[p]revents virus-infected emails and instant messages from spreading'"; (3) and "features 'Up-to-the-minute Protection' and 'provides continuous protection updates and new product features as they become available throughout your product subscription period, helping to keep your computer protected against the latest Internet threats and risks.'"  *Id.*  Ms. Cheslow alleges she relied on each representation in purchasing the Cheslow First Software and "researched and relied on comparable representations through product reviews on CNET, third-party product pages, and customer reviews."  *Id.*  She does not identify such reviews or pages or allege how they could be attributable to Symantec.  *Id.*

On December 16, 2010, Ms. Cheslow alleges she purchased a subscription for the Norton 360 Premier, v. 4.0 software ("Cheslow Second Software") through Symantec's website.  FAC ¶ 26.  She claims she reviewed the relevant product page on Symantec's website prior to purchase, where Symantec stated that the software provides "Award-Winning Protection" and "unprecedented and unmatched threat detection."  *Id.*  She further alleges that Symantec stated the software "[d]elivers industry-leading, all-in-one protection against identity theft, online fraud, phishing, viruses, Trojans, bots, rootkits, spyware, and the latest cyber-threats" while also "[d]eliver[ing] up to the minute virus protection."  *Id.*  The FAC alleges that Ms. Cheslow again "researched and relied on" third party reviews and webpages but does not identify them or allege how they could be attributable to Symantec.  *Id.*

### 3.    Symantec's License Agreements

Plaintiffs' purchase and use of the Affected Products are governed by several agreements and policies.  These include end-user license agreements ("EULAs") that the FAC expressly invokes as governing Plaintiffs' purchases.  *See, e.g.*, FAC ¶¶ 12, 14, 22 ("Symantec's software license agreement identified California law as the choice of law for U.S. purchasers and did not provide any terms and conditions that would contravene the presumption of a shipment contract under California law"); *see also id.* at ¶ 27 (same).  The EULAs are available by link at the bottom of each product page cited in the FAC.  *See id.* at nn.13-20, 22-28; *see also* Declaration of

FENWICK & WEST LLP
ATTORNEYS AT LAW

Molly Melcher ("Melcher Decl.") at ¶¶ 2-4, Exs. A, C, E.

The applicable EULAs for the Affected Products each include a limited warranty provision.  It warrants only that the *physical media* on which Symantec's software is distributed "will be free from defects for a period of sixty (60) days" from delivery of the software, and that the sole remedy for breach is replacement or refund within the warranty period.[1]  As to the Software, the EULA expressly provides that "Symantec does not warrant that the Software will meet Your requirements or that operation of the Software will be uninterrupted *or that the Software will be error-free*."  *Id.* (emphasis added).  It concludes with an express disclaimer of all other warranties, express or implied, including warranties of merchantability.  *Id.*  The EULAs further provide a sixty-day money back guarantee, which entitles the licensee to a refund during that period only for the money paid for the Software if he or she is not completely satisfied.  *Id.*

### 4. Plaintiffs' Claims Regarding the Alleged Defect

Google's Project Zero ("PZ") is a team of expert cybersecurity analysts dedicated to identifying and resolving vulnerabilities or flaws in software that could be exploited by hackers. FAC ¶ 2. [2]  On April 28, 2016, PZ advised Symantec of potential vulnerabilities it identified in a component of Symantec's software, the "AntiVirus Decomposer Engine."  On June 28, 2016, after Symantec had patched them, PZ publicly released a report detailing the potential vulnerabilities. *See, e.g.*, *id.* at ¶¶ 2, 4, 29.  Plaintiffs allege that PZ discovered a vulnerability based on a design that unpacked compressed executable files in the privileged core of a computer's operating system.  FAC ¶ 29.  The FAC alleges that Symantec failed to implement industry-standard security measures such as "sandboxing," which exposed users' computers to a "critical vulnerability."  *Id.* at ¶ 31.  The FAC further alleges that Symantec relied on third party open source code to design this Engine but had failed to update that code for at least seven years, resulting in vulnerabilities.  *Id.* at ¶¶ 33-34.

---

[1] *See* Request for Judicial Notice in Support of Defendant Symantec Corporation's Motion to Dismiss Plaintiffs' FAC ("RJN"); Melcher Decl., Exs. B, D, F (containing the three separate EULAs, each containing consistent terms, applicable to the Beyer Second and Third Software, Cheslow First Software, and Cheslow Second Software).

[2] Symantec disputes Plaintiffs' summary and characterization of the PZ report and the alleged potential vulnerabilities, but will address this issue at a later time in the litigation, if necessary.

FENWICK & WEST LLP
ATTORNEYS AT LAW

There is no allegation that Symantec knew of the alleged defects before Plaintiffs' purchases, nor at any time before PZ's report—only conclusory allegations that Symantec "knew, or was otherwise reckless or willfully blind in not knowing" of the defects. *See, e.g. id.* at ¶ 45. By contrast, the FAC acknowledges that, once PZ alerted Symantec, Symantec worked with PZ to resolve the reported issues, successfully issuing a security advisory and patches before PZ went public on the June 28, 2016. *Id.* at ¶¶ 2, 4, 29. The FAC admits that the alleged vulnerabilities, including two additional issues identified later by PZ, were closed at least by September 19, 2016, and, as a result, defines the class period as ending on that date. *See id.* at ¶¶ 4, 47-48.

Plaintiffs do not allege that there was ever any manifestation of the alleged defects in any Symantec software. None. There is no allegation that any fraudster discovered, much less exploited them. Plaintiffs do not allege any intrusion or malfunction due to this software design. And Plaintiffs do not identify any representation promising that the software's engine was invulnerable or might not need patches as defects came to light. *See generally* FAC. The statements on which Plaintiffs allegedly "relied" promised software that effectively accomplished antivirus detection and exclusion. *Id.* at ¶¶ 21-27. There is no allegation that the software did not perform those tasks as advertised.

## ARGUMENT

## I.   PLAINTIFFS LACK ARTICLE III STANDING

### A.   Legal Standard under Fed. R. Civ. P. 12(b)(1) and Article III

To establish Article III standing, a plaintiff bears the burden of alleging: (1) an injury in fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). The plaintiff's pleadings "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (internal quotation marks omitted). In putative class actions, a plaintiff must show he or she has been personally injured; allegations of injury to the class are insufficient.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003).

2       **B.     Plaintiffs Cannot Establish Article III Standing Based on Their**
        **"Overpayment" Theory**

3

4                **1.     Plaintiffs' Allegations Do Not Substantiate Concrete and Actual**
                 **Injury**

5

6          Plaintiffs overreach in asserting an "overpayment" theory of standing because they can

7   provide no concrete facts showing that they actually overpaid.  Plaintiffs hypothesize that if they

8   had known about the alleged potential vulnerabilities, they would not have purchased the

9   Symantec software or they would have paid less for it.  *See, e.g.*, FAC ¶¶ 91, 95, 99.  The Ninth

10  Circuit has held that such an overpayment theory can, in certain instances, substantiate actual,

11  concrete, and particularized injury, so long as a plaintiff pleads facts showing that he did not

12  actually get the value that he paid for.  As examples, a consumer suffers real harm when his

13  housing development, represented as being sold to stable buyers, ends up being riddled with liar

14  loans, abandonment and foreclosures; or when an automotive braking upgrade he purchases turns

15  out not to work in bad weather; or when an eco-diesel manufacturer fraudulently sells cars that do

16  not deliver the advertised green alternative plus added torque.[3]  In such instances, concrete, bad

17  consequences can substantiate an overpayment by substantiating that the product did not deliver

18  the value paid.

19         By contrast, here Plaintiffs' claims of "overpayment" are abstract, conclusory,

20  hypothetical and conjectural.  Nothing bad is alleged to have *actually* happened to these

21  Plaintiffs.  They purchased antivirus protection.  And the software worked to provide them that

22  protection.  There is no allegation that the potential vulnerabilities were ever publicly known,

23  much less exploited to intrude on anyone's computer.  There is no allegation that Plaintiffs lost

24  resale value; that they incurred costs having products repaired or out of service; or even that they

25  suffered any psychic worry about vulnerability, since they stopped using the software years

26  before the PZ report.  There is also no future risk of injury or harm to anyone because, as the FAC

27  _____
    [3] *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *Mazza v. Am. Honda Motor*
28  *Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales*
    *Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 950 (N.D. Cal. 2018) ("*Ecodiesel*").

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  concedes, Symantec implemented fixes for the alleged potential vulnerabilities before any were

2  exploited. *See* FAC ¶¶ 4, 5. Indeed, for these named Plaintiffs, a claim of harm is beyond far-

3  fetched: even assuming the alleged vulnerabilities that PZ uncovered had *not* been repaired before

4  PZ announced them (which the FAC acknowledges they were), Plaintiffs faced no risk of injury

5  after that announcement. These Plaintiffs have not alleged any subscription to or use of

6  Symantec software for over *four years* preceding that announcement. In short, none of the types

7  of harm that could actually substantiate a claim of overpayment has been pled here.

8          At most, Plaintiffs allege that they purchased software that—long after they stopped using

9  it—had to be patched. But Plaintiffs cannot allege that this provided less than they paid for

10  because Symantec never promised the software would be free of any bug, defect, or vulnerability.

11  Nor *could* Symantec guarantee perfection. As Plaintiffs' own allegations acknowledge, no

12  software is free of bugs and vulnerabilities, which is why software is constantly being updated

13  and patched. *E.g.*, *id.* at ¶¶ 37-38 (citing reports of vulnerabilities in security software

14  manufactured by several other manufacturers). The overpayment question is not whether there

15  was a potential vulnerability in the software, even a critical one, but rather was there real, non-

16  speculative, concrete harm that resulted to these Plaintiffs from that vulnerability? The answer

17  from the FAC is no. As a result, Plaintiffs' claims that they somehow did not get the benefit of

18  their bargain assumes entitlement to a "benefit that was not part of the bargain to begin with."

19  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).

20          **2.      Plaintiffs Must Allege "Something More" Than Mere**
                      **Overpayment**

21

22          Plaintiffs' claimed injury is that, in retrospect, they stood at greater hypothetical risk than

23  they assumed when purchasing the software. This is exactly the kind of conjectural, abstract

24  harm that cannot support standing, whether dressed in the rubric of "overpayment" or otherwise.

25  The Ninth Circuit, when interpreting cases involving risk from an alleged product defect that has

26  never malfunctioned, requires that plaintiffs allege "something more" than a conclusory

27  allegation of "overpayment" to confer standing. "When economic loss is predicated solely on

28  how a product functions . . . something more is required than simply alleging an overpayment for

FENWICK & WEST LLP
ATTORNEYS AT LAW

a 'defective' product."  *Cahen*, 147 F. Supp. 3d at 970, *aff'd*, 717 F. App'x 720; *see also Papasan v. Domestic Corp.*, No. 16-cv-02117-HSG, 2017 WL 4865602, at *6 (N.D. Cal. Oct. 27, 2017) ("[W]here the alleged economic loss arises solely from a defect in a product, but that product has not yet failed to perform, 'something more' is required beyond simply alleging overpayment for a defective product.").

*Cahen* is on all fours with this case.  Both involve a potential software security vulnerability that had never resulted in intrusion or any other harm or injury.  *Cahen*, 717 F. App'x at 723.  The *Cahen* consumers alleged that Toyota's open, unencrypted, Bluetooth and Wi-Fi-enabled cars were easily accessible to hackers potentially seizing control.  Judge Orrick rejected plaintiffs' claims that they had standing, holding that, absent something more, allegations of "overpayment" or loss of the "benefit of the bargain" "cannot obscure that the alleged economic injury rests solely on the existence of a speculative risk of future harm."  147 F. Supp. 3d at 970-71 (citing numerous similar decisions in this District).  The Ninth Circuit affirmed stating:

> "[T]he allegations that the vehicles are worth less are conclusory and unsupported by any facts.  The district court was correct in noting that 'plaintiffs have not, for example, alleged a demonstrable effect on the market for their specific vehicles . . . [nor] have they alleged a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out-of-pocket damages.'   . . . [P]laintiffs have only made conclusory allegations that their cars are worth less and have not alleged sufficient facts to establish Article III standing."

717 F. App'x at 723-24.

Here we do not have "something more" than in *Cahen*; we have considerably less.  In *Cahen*, the plaintiffs still owned their unrepaired cars.  Hence, they faced at least some risk of future harm from reduced resale value or intrusion into their software.  *Id.*  By contrast, Plaintiffs here own no software to resell and face no risk of future intrusion.  Plaintiffs had stopped using the software long before PZ's report and acknowledge corrective steps cured any potential vulnerability in software still in use years ago.  FAC ¶ 4.  Thus Plaintiffs' claim of overpayment based on software vulnerability is even more hypothetical and unsubstantiated than that found insufficient in *Cahen*.

This Court recognized, but distinguished, the "something more" requirement in *Ecodiesel*,

FENWICK & WEST LLP
ATTORNEYS AT LAW

295 F. Supp. 3d at 950.  There, defendants had intentionally concealed the fact that vehicles emitted NOx at levels up to 20 times legal limits and could not achieve the represented towing power, performance or fuel economy without cheating emissions tests.  *Id.* at 946.  This Court found *Cahen* distinguishable given these "concrete allegations of a *current universal* vehicle defect [which] plausibly and specifically support an overpayment theory of injury."  *Id.* at 950; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 4777134, at *4 (N.D. Cal. Oct. 3, 2018) (distinguishing cases rejecting overpayment standing "for vehicles that essentially work as advertised [because t]hat is not the case here.  Plaintiffs allege that the class vehicles emitted NOx at levels up to 40 times the legal limit from the moment they were put in use").  No similar facts exist here.

As Judge Gilliam explained in *Papasan*, reliance on the aphorism that overpayment amounts to economic injury is insufficient absent concrete and particularized injury in fact. *Papasan*, 2017 WL 4865602, at *6 (discussing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)).  Judge Gilliam distinguished the "overpayment" allegation in *Hinojos* because the false representation upon which *Hinojos* relied was that the product price had been "marked down from a fictitious 'original' or 'regular price.'"  *Papasan*, 2017 WL 4865602, at *6.  In *Hinojos*, the economic injury *was* the price difference paid, which was not speculative but directly discernable.  *Id*.  In *Papasan,* on the other hand, despite the fact that the alleged defect in the refrigerators had caused fires for other consumers (including other named plaintiffs), the court held that Ms. Papasan's allegation that she "unknowingly overpaid" for the refrigerator was vague and speculative where *she* had not suffered a fire.  Ms. Papasan, like Plaintiffs here, at all times used the product without any problem.  *Id.*  She therefore failed to show that "she suffered tangible losses—economic, functional, or otherwise."  *Id.*  As here, "fail[ing] to plead 'something more' beyond the conclusory allegation that she overpaid," rendered the claim of injury insufficient to establish Article III standing.  *Id.* at *7.

Accordingly, the Court should dismiss the entire FAC due to lack of Article III standing.

## II. PLAINTIFFS' FRAUD CLAIMS UNDER THE CLRA, FAL, AND UCL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Legal Standard under Fed. R. Civ. P. 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory. *See, e.g.*, *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996).  The complaint must include sufficient facts from which an inference of wrongdoing may be drawn—facts that suggest that the right to relief is more than conceivable, but also plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" and must allege facts that, if true, raise the right to relief "above the speculative level." *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint is defective if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  Courts need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Gonzalez v. Planned Parenthood of L.A.*, 759 F. 3d 1112, 1115 (9th Cir. 2014).

### B. Fed. R. Civ. P. 9(b)'s Particularity Requirement

As this Court held in its MTD Order, Plaintiffs' CLRA, FAL, and UCL claims sound in fraud and are subject to Rule 9(b)'s particularity requirement.  MTD Order at 7:10-17.  A plaintiff therefore must identify "which [misrepresentations] he relied upon in making his decision to buy" the Norton Products.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Critically, "plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2014 WL 2450996 at *3 (N.D. Cal. June 2, 2014), *aff'd*, 654 F. App'x 338 (9th Cir. 2016) (same).  Conclusory allegations of fraud are not enough—plaintiffs must plead detailed and specific facts. *See Richardson v. Reliance Nat'l Indemn. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) ("Plaintiff may not simply set forth conclusory allegations of fraud punctuated by a handful of neutral facts.") (internal quotation marks omitted).

1

**C.      Plaintiffs Fail to Identify Any False, Actionable, Non-Puffing Statements upon Which They Relied**

2

3      Plaintiffs' affirmative misrepresentation claims fail because all of the statements that

4   Plaintiffs allege they reviewed prior to purchase constitute non-actionable puffery.  To be legally

5   actionable, a statement must be a "specific and measurable claim, capable of being proved false

6   or of being reasonably interpreted as a statement of objective fact."  *See* MTD Order at 7-11;

7   *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014).  Generalized statements

8   that say nothing about "specific characteristics or components" of the product are "mere puffery"

9   upon which a reasonable consumer would not rely, and thus are not actionable under the CLRA,

10   FAL, or UCL.  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854-55 (N.D. Cal. 2012).

11   This determination is a "legal question that may be resolved on a Rule 12(b)(6) motion."  *Newcal*

12   *Indus., Inc. v. Nikon Office Sols.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

13      **1.      The Statements Plaintiffs Identify Are Non-Actionable Puffery**

14      The general laudatory descriptions of antivirus products identified by Plaintiffs all

15   constitute classic puffery.  This Court already decided as much in its MTD Order, with the sole

16   exception of the term "industry leading":

17   •   "Defends you against a broad range of online threats."  FAC ¶ 22.  *See* MTD Order at

18        11:10-16 ("defends you against a broad range of online threats through key technologies,

19        including antivirus, antispyware, rootkit detection, and automatic updates" is non-

20        actionable puffery).  Similar statements such as "removes dangerous threats from the files

21        you download" (FAC ¶ 23), "stops viruses, worms, spyware, bots, and more" (*id.* at ¶ 25),

22        and "prevents virus-infected emails and instant messages from spreading" (*id.*) constitute

23        puffery for the same reason—they are general descriptions incapable of being proved

24        false.  MTD Order at 11:10-16.[4]

25

26   ---

[4] Plaintiff Beyer also alleges that he reviewed the statement "protects against viruses, spyware, hackers, rootkits, identity theft, phishing scams, and fraudulent websites" on Best Buy's website.

27   FAC ¶ 23.  Yet, as this Court held in its MTD Order, there is no allegation that such statement is attributable to Symantec.  MTD Order at 8:12-16.  Regardless, it constitutes non-actionable

28   puffery, and Plaintiffs include no allegations establishing why such statement is false.

FENWICK & WEST LLP
ATTORNEYS AT LAW

- "'[A]utomatic updates' that '[i]ncludes protection updates and new product features as available through the renewal period.'" FAC ¶ 22; *see also id.* at ¶¶ 23, 25. *See* MTD Order at 11:10-16 ("automatic updates" is non-actionable puffery); *In re Apple Inc. Device Performance Litig.*, No. 18-MD-02827-EJD, 2018 WL 4772311, at *14 (N.D. Cal. Oct. 1, 2018) ("Apple's broad statements about improving features and product superiority are insufficient to ground Plaintiffs' affirmative misrepresentation claim."); *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178-JCS, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008) (statements "touting the 'improvements' and 'enhancements' in Intuit's Software without making any verifiable factual representations" are not actionable).

- Various vague, laudatory statements incapable of being proved false: "enhanced performance" (FAC ¶ 22), "up to the minute protection" (*id.* at ¶ 25), "provides unprecedented and unmatched threat detection." *See, e.g.*, *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (promise to deliver "innovation at unmatched scale" is puffery); *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) ("'[U]nprecedented' results is non-actionable puffery . . . ."); *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("[A]dvertising which merely states in general terms that one product is superior is not actionable") (alteration in original).

- Award-winning protection." FAC ¶¶ 22, 25, 26. *See, e.g.*, *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 1548872, at *3 (N.D. Cal. Apr. 7, 2015) ("award-winning vehicles" is non-actionable puffery).

As to the term "industry leading,"[5] Symantec appreciates the Court's granting leave to rebrief the issue. Dkt. No. 50. This term—and *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F.

---

[5] The FAC describes claims of "industry leading virus, spyware, and firewall protection" (FAC ¶ 22), and "industry-leading layered security." *Id.* Plaintiff Cheslow also alleges that she reviewed the statement "delivers industry-leading, all in one protection against identity theft, online fraud, phishing, viruses, Trojans, bots, rootkits, spyware, and the latest cyber threats" while also "delivering up to the minute virus protection." FAC ¶ 26. Yet, the website she cites does not contain this statement. *See id.* at ¶ 26 n.28. In any event, this statement is puffery for the reasons discussed below, and there is no allegation establishing why such statement is false.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Supp. 3d 852 (N.D. Cal. 2015) mentioning it—were not a focus of briefing on the initial

Complaint, as they were not relied upon by Plaintiffs.  Symantec therefore did not present the

numerous cases, from false advertising to unfair competition to securities fraud, that have all held

the term "industry leading" to be quintessential puffery:

- *Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334-35 (M.D. Fla. 2010) (holding in false advertising and trademark infringement case that "industry leading" is "classic puffery");

- *McVicar v. Goodman Glob., Inc.*, No. SACV 13-1223-DOC (RNBx), 2014 WL 12573991, at *6 (C.D. Cal. Aug. 6, 2014) (finding in unfair competition and false advertising class action that defendant's statement that its products have "industry leading warranties" is "clearly puffery");

- *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) (holding in securities fraud class action that defendant's CEO's "claims of 'industry leading' growth" are puffery);

- *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 183-84 (E.D.N.Y. 2016), *reconsideration denied*, No. 15-CV-3015(FB)(CLP), 2017 WL 4326503 (E.D.N.Y. Sept. 28, 2017) (finding Uber Technologies, Inc.'s use of "industry-leading standards" for background checks is puffery);

- *3226701 Canada, Inc. v. Qualcomm, Inc.*, No. 15CV2678-MMA (WVG), 2017 WL 971846, at *8-9 (S.D. Cal. Jan. 27, 2017) (finding in a securities fraud class action that defendant's statement that its product had "industry-leading power efficiency" is "too vague to constitute [a] factual misstatement[]");

- *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846 (SDW), 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) (finding in alleged product defect class action that defendant's claims of "industry leading" technology and features are not "'statements of fact' but rather subjective expressions of opinion," which are "routinely made by companies in advertising to gain a competitive advantage in the industry");

- *Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-CV-448-SM, 2012 WL 1801742, at *3 (D.N.H. May 17, 2012) (holding that defendant's claim about its "leading position in the industry" is not actionable);

- *In re Deutsche Bank AG Sec. Litig.*, No. 09 CV 1714 (DAB), 2016 WL 4083429, at *28 (S.D.N.Y. July 25, 2016) (holding in securities fraud class action that defendant's statement that its risk controls were "industry leading" constitutes "inactionable puffery");

The case relied upon by the Court in its MTD Order, *L.A. Taxi.*, 114 F. Supp. 3d 852, does

not undermine this unbroken line of decisions.  In *L.A. Taxi*, "industry leading" appeared amongst

numerous other measurable representations that included "'specific' assertions" that "describe[d]

'absolute characteristics' of Uber's services that could be tested."  *Id.* at 861.  The court held that

Uber's references to the "strictest safety standards" and "explicit comparisons with competitor

FENWICK & WEST LLP
ATTORNEYS AT LAW

taxi services reinforce[d] the impression that Uber's statements [were] ground in fact." *Id.* The court in *L.A. Taxi* did not hold that "industry leading," on its own, without additional specifications, constituted an actionable statement. Unlike in *L.A. Taxi*, there is no allegation that Symantec used "industry leading" amongst any quantifiable, specific assertions that describe absolute or measurable characteristics of Symantec's products. It would therefore be an error of law to proceed on the basis that the term "industry leading" is actionable in this case.

In the MTD Order, this Court opined that "industry leading" could be converted into a provable, actionable claim because a customer might infer it meant "best practices." MTD Order at 11:4-8. Yet, Plaintiffs have never alleged that they so interpreted the term. *See generally* Compl., FAC. Regardless, it is precisely because "industry leading" has numerous different, unquantifiable and indeterminate connotations that the courts have found it inherently incapable of supporting a cause of action. "Industry leading" could also mean a leader in time, sales, quality (however defined), efficiency, innovation, value, brand recognition, or any number of other characteristics. "[A] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Indus.*, 513 F.3d at 1053. To substitute one possible, subjective interpretation for vague, puffing statement stands the doctrine on its head. Symantec's alleged marketing used the non-actionable statement "industry leading." It cannot be liable for a claim of "best practices" that it never made.

But even if Symantec had asserted that it followed "best practices," that would also constitute non-actionable puffery. *See, e.g., Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *12 (N.D. Cal. Mar. 26, 2018) (claim to "giv[e] [customers] tools, insights and best practices" constituted puffery not actionable under the Lanham Act) (alterations in original and omitted); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509 WHW-CLW, 2018 WL 3772675, at *23 (D.N.J. Aug. 8, 2018) (holding in securities fraud case that defendant's claim of "bringing best practices to our clients for our traditional services, constantly lower[ing] their cost of ownership while maintaining our margin" is mere puffery) (alteration in original); *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, No. 08 Civ. 11278 (DLC), 2009 WL

FENWICK & WEST LLP
ATTORNEYS AT LAW

4823923, at *11 (S.D.N.Y. Dec. 14, 2009) (holding that defendant's statement that it was "committed to best practice in preparing its financial statements" is puffery).  Accordingly, Symantec's claim of "industry leading" software cannot be an actionable representation or give rise to a duty to disclose.

## 2.    There Are No Allegations Establishing Falsity

Even if Plaintiffs could identify an actionable statement about specific or absolute characteristics of the software (they do not), their claims fail for the additional reason that Plaintiffs "fail to particularly explain what is false or misleading about the statements*." In re Apple Inc. Device Performance Litig.*, 2018 WL 4772311, at *15; *Singh v. Google Inc.*, No. 16-CV-03734-BLF, 2017 WL 2404986, at *5 (N.D. Cal. June 2, 2017) (same).  There is no allegation that the advertised features did not operate as represented.  Plaintiffs do not allege that the software failed to provide "enhanced protection," "layered security," "continuous protection," or defense against "online threats."  *See generally* FAC.  Nor do Plaintiffs allege that Symantec failed to provide "automatic updates,"[6] "new product features," or "[a]ward-[w]inning protection."  *Id.*  Plaintiffs still fail to plead any facts supporting their assumption that the alleged potential vulnerability rendered these statements false or misleading.

The only statement that the alleged vulnerabilities might render false would be a claim of invulnerability—except that Symantec is not alleged to have made that claim.  To the contrary, Symantec expressly represented to Plaintiffs that the software was *not* guaranteed to be "error free."  Plaintiffs thus provide no facts establishing that any representation was false or deceptive. *See In re Apple Inc. Device Performance Litig.*, 2018 WL 4772311, at *15 ("No plaintiff who purchased an iPhone 5 alleges that he or she was unable to use the phone for the amount of time specified in Apple's advertising."); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *6 (N.D. Cal. Feb. 14, 2014) (advertising touting Siri functionality did not constitute a false representation that Siri would be able to answer every question, and do so

---

[6] It cannot be inferred that, because Symantec allegedly failed to implement patches for third-party source code (*see* FAC ¶ 28), it failed to provide "automatic updates" to counter new viruses or malware.  Plaintiffs include no facts establishing otherwise.  *See generally* FAC.  And Plaintiffs admit that Symantec issued updates for such alleged vulnerabilities.  *See id.* at ¶ 4.

17

1  consistently), *aff'd*, 637 F. App'x 414, 416 (9th Cir. 2016) ("Failure to meet Plaintiffs' undefined

2  expectations of consistency does not render Apple's representations misleading.").

3       Because the FAC fails to allege any non-puffing representations, nor any actual falsity,

4  Plaintiffs' affirmative misrepresentation claims should be dismissed.

5       **D.**     **Symantec Did Not Have a Duty to Disclose Any Alleged Vulnerability**

6       Plaintiffs' omission claims under the CLRA, FAL, and UCL fare no better.[7]  "[T]o be

7  actionable the omission must be contrary to a representation actually made by the defendant, or

8  an omission of a fact the defendant was obliged to disclose."  *In re Apple Inc. Device*

9  *Performance Litig.*, 2018 WL 4772311, at \*15 (citing *Daugherty v. Am. Honda Motor Co.*, 144

10  Cal.App.4th 824, 835 (2006); *Wilson*, 668 F.3d at 1141).  The imposition of a duty to disclose is

11  strictly limited in the Ninth Circuit.  *Wilson*, 668 F.3d at 1141; *see also In re Apple Inc. Device*

12  *Performance Litig.*, 2018 WL 4772311, at \*19 ("California courts have been careful to 'cabin[]

13  the scope of the duty to disclose to avoid the unsavory result that manufacturers are on the hook

14  for every product defect that occurs at any time, regardless of any time limits contained in their

15  warranties.'") (citing *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 928 (N.D. Cal.

16  2018)) (alterations in original).  Under *Wilson,* absent a material misrepresentation, a

17  manufacturer's duty to consumers is limited to its warranty obligations or a "safety issue"—a

18  design defect causing an unreasonable safety hazard.  *Wilson*, 668 F.3d at 1141; *Williams v.*

19  *Yamaha Motor Co.*, 851 F.3d 1015, 1025-26 (9th Cir. 2017).

20       In *Hodsdon*, 891 F.3d 857, the Ninth Circuit reaffirmed its basic prohibition on imposing

21  a duty to disclose a product defect absent a safety hazard, reiterating that *Wilson* remains good

22  law.  *Id.* at 861-62; *see also Williams*, 851 F.3d at 1028-29 (following *Wilson*); MTD Order at 13-

23  14.  The *Hodsdon* panel also sought to harmonize Ninth Circuit precedent with California state

24  appellate decisions in *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) and *Rutledge v.*

25  *Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015).  As *Hodsdon* explained, those state cases

26  _____

27  [7] Plaintiffs' FAL claim cannot stand based on an omission/failure to disclose theory because
Plaintiffs fail to identify any actionable statement.  *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016,
1023-24 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (collecting cases holding that

28  omission of a material fact in advertisements, labels, or literature does not state an FAL claim).

FENWICK & WEST LLP
ATTORNEYS AT LAW

had found liability for a defective "computer chip that corrupts the hard drive, or a laptop screen that goes dark [due to a defective inverter] ***render[ing] those products incapable of use by any consumer***."  891 F.3d at 864 (emphasis added).  *Hodsdon* synthesized *Collins* and *Rutledge* into the proposition that—at least for a defect "which manifested itself during the warranty period," which the defects in both cases had (*id.* at 862, 863)—a duty to disclose could exist for a "[physical] defect central to the product's function," where the alleged omission was material and the plaintiff sufficiently alleged one of the four factors identified in *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  MTD Order at 13-14.

In the MTD Order, this Court acknowledged that no safety issue was present in this case.  But it held that the alleged potential vulnerability was a "physical defect," which was "central to the function of the Affected Products."  *Id.* at 14.  Symantec appreciates being granted leave to rebrief *Hodsdon*, which came down after the prior motion had been filed.  Dkt. No. 50.

First, the FAC contains no allegation of any physical defect causing impact on Plaintiffs, much less during Symantec's limited warranty period.  No computer or software has been broken or failed to function.  By contrast, in *Collins* and *Rutledge*, the physical defects were a defective chip and inverter that actually rendered the products physically incapable of use, breaking either the hard drive or the laptop screen, during the warranty period.  In harmonizing *Wilson*'s strict limitations on imposition of a duty to disclose with *Collins* and *Rutledge*, *Hodsdon* does not require imposing a duty to disclose a purported software flaw that never manifested during any limited warranty or right of return periods (which were only 60 days) and was fixed before it had any adverse physical impact.

Further, Rule 9(b) does not permit instances of malfunction to be *inferred* in the absence of any factual allegation of same.  The MTD Order found that "the complaint sufficiently alleged the Defects are central to the function of the Affected Products" because, "[a]lthough the complaint does not identify specific instances of resulting damage to computers, . . . that is not dispositive to a motion to dismiss where all reasonable inferences must be drawn in Plaintiff's favor."  MTD Order at 14-15.  This reasoning infers that there has been some actual damage to computers even though no such damage has ever been identified or alleged.  *See also id.* at n.2

FENWICK & WEST LLP
ATTORNEYS AT LAW

(providing that the frequency of any harm suffered could be established on summary judgment). Relying on such an inference, unsupported by pleaded facts, is contrary to Rule 9(b) and, for that matter, Rule 8(a). *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal citation and quotations omitted).

The Ninth Circuit has made clear that Rule 9(b) applies to claims of nondisclosure. *See, e.g., Kearns*, 567 F.3d at 1127. Under *Hodsdon,* an essential element of Plaintiffs' nondisclosure claim is a "physical defect central to the functioning of the product," which, in *Collins* and *Rutledge*, rendered the product "incapable of use by any consumer." But the FAC fails to allege any functioning of the product that was affected by the alleged vulnerability, much less the particulars of who, what, when, where, and how of a malfunction rendering it incapable of use. Tens of millions of products operated over eleven years with no reported or alleged incidents in which a hacker successfully exploited the vulnerability. Nothing malfunctioned. Ever. Far from being incapable of use, Plaintiffs kept repurchasing the product and using it, with no adverse effect. If the software always worked as advertised, without any damage related to the alleged vulnerability, where is the "centrality"? A fraud claim of this scope cannot proceed based on an implausible inference contrary to history; it requires at least a specific factual allegation.

Relying on such an inference would also be contrary to the controlling case of *Williams.* There, the Ninth Circuit dismissed on the pleadings a claim of an undisclosed defect that could cause a boat engine to catch fire, because the "risk is speculative and unsupported by factual allegations." 851 F.3d at 1028. A party's allegations of an unreasonable safety hazard—or here, a defect central to functionality—"must describe more than merely 'conjectural and hypothetical' injuries." *Id. Williams* was dismissed because the claim "lacks any allegations indicating that any customer, much less any plaintiff, experienced" damage from the alleged defect. *Id.* Indeed, *Williams* dismissed under Rule 8(a), without even needing to deploy Rule 9(b)'s particularity requirements. *Id.* at 1025. The same applies here.

Relying on an inference that there is a potential for harm is especially inappropriate in this case, where Plaintiffs acknowledge that Symantec fixed the alleged vulnerabilities years ago.

1   FAC ¶ 4.  If a defect were even potentially central to the functioning of Symantec's products, it

2   had to have manifested before that fix.  It did not.  There is thus no factual basis to infer that

3   disruption of the central functionality is possible in the future.[8]

4       Finally, here, the 60-day limited warranty for the hardware, and 60-day right of return

5   period for the software expired many years ago.  To impose a duty to disclose would improperly

6   extend such warranty periods a decade or more beyond their terms.  *In re Apple Inc. Device*

7   *Performance Litig.*, 2018 WL 4772311, at *19.  There is simply no basis to impose a duty to

8   disclose here—where Plaintiffs have alleged no affirmative misrepresentation, no safety risk, and

9   no harm or impact on performance, past, present or future, much less an impact that rendered the

10  product "incapable of use."  Here, Symantec's duty to its consumers should be limited to its

11  warranty obligations, which have long expired.  *Wilson*, 668 F.3d at 1141.

12  **III.   PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR FAILURE
13       TO STATE A CLAIM AS A MATTER OF LAW**

14      **A.   Plaintiffs' SBA Claim Should be Dismissed for Failure to State a Claim**

15      Plaintiffs' SBA claim suffers from several substantive defects.

16      **1.   Plaintiffs Fail to Plead that the Affected Products Were Not
17         Reasonably Suited for Ordinary Use**

18      First, Plaintiffs fail to plead that the alleged software was not reasonably suited for

19  ordinary use.  *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 1743381, at *6 (N.D. Cal.

20  Apr. 16, 2015).  "A Plaintiff claiming breach of implied warranty of merchantability must show

21  that the product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Burdt v.*

22  *Whirlpool Corp.*, No. C 15-01563 JSW, 2015 WL 4647929, at *5 (N.D. Cal. Aug. 5, 2015); *see*

23  *also Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKX), 2011 WL 13142144, at *11

24  (C.D. Cal. Apr. 28, 2011) ("The mere manifestation of a defect by itself does not constitute a

---

25  [8] This factor distinguishes the two instances identified in *Williams*, 851 F.3d at 1028-29 of cases

26  allowed to proceed where products *already malfunctioning in the field* posed a likelihood of
    future physical safety issues.  *See Apodaca v. Whirlpool Corp*, No. SACV 13-00725 JVS (ANx),

27  2013 WL 6477821 (C.D. Cal. Nov. 8, 2018) (ongoing risk of fire from dishwasher wiring that had
    repeatedly short circuited and, according to complaint, caused fire for another consumer); *Ehrlich*

28  *v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (plaintiff had suffered
    repeated broken windshields that presented ongoing safety risks).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    breach of the implied warranty of merchantability.  Instead, there must be a fundamental defect

2    that renders the product unfit for its ordinary purpose.").  This standard is at least as strict as the

3    "central functionality" standard under *Hodsdon*, which the FAC does not meet as outlined in

4    Section II.D above.

5         On point is a recent decision by Judge Koh, dismissing a similar implied warranty claim

6    based on alleged vulnerabilities discovered by PZ.  *Hauck v. Advanced Micro Devices, Inc.*, No.

7    18-CV-00447-LHK, 2018 WL 5729234, at *8 (N.D. Cal. Oct. 29, 2018).  In *Hauck*, Judge Koh

8    noted that the complaint

9         contains no allegation that the basic functionality of the processors has been
     compromised by the Defect.  Plaintiffs do not allege that the Defect compromises
10        the AMD processors' safety, renders them inoperable, or drastically reduces their
     functionality . . . .  Plaintiffs do not allege that the AMD processors fail to work at
11        all, or fail to work even a majority of the time . . . .  In fact, Plaintiffs make no
     allegations about the performance of AMD's processors at all, other than stating that
12        patches to fix the Spectre security risk decrease clock speed.

13

14   *Id.* at *8-9 (holding the vulnerability did "not rise to the level of a serious enough defect to render

15   the processors unfit for their ordinary purpose"); *see also Taragan v. Nissan N. Am., Inc.*, No. C

16   09-3660 SBA, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) (dismissing SBA claim where

17   plaintiffs alleged a risk that a vehicle carrying an intelligent key system would roll away if not

18   properly parked but failed to allege that any plaintiff experienced such incident).

19        The allegations of the FAC compel the same result as in *Hauck*.  Apart from boilerplate

20   legal conclusions (FAC ¶¶ 7, 76), Plaintiffs fail to allege that the software did not perform or was

21   unfit for its ordinary use.  To the contrary, both Plaintiffs used and repeatedly purchased renewals

22   of their products.  *Id.* at ¶¶ 22-26.  Nowhere do Plaintiffs allege that their antivirus software failed

23   to catch viruses, spyware, or other malware as advertised.  That the alleged vulnerabilities were

24   fixable and fixed (*id.* at ¶ 4), with no adverse consequence to Plaintiffs, further refutes any

25   conclusory allegation that the software lacked even the most basic degree of fitness for use.

26        **2.    Plaintiffs Fail to Allege that They Purchased the Accused Products
         in California**

27

28   Consistent with the Court's finding in the MTD Order, Plaintiffs' SBA claim still fails

FENWICK & WEST LLP
ATTORNEYS AT LAW

because it does not sufficiently allege that the software was "sold at retail in this state" as required to state a claim. *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 2d at 926 (quoting Cal. Civ. Code § 1792) (dismissing SBA claim where plaintiffs failed to allege where they purchased the allegedly defective phones). Plaintiff Beyer, a resident of Michigan at the time of his purchase at Best Buy, conceded in opposition to the first motion to dismiss that he did "not allege that title to his Third Software passed in California." Plaintiff's Opposition to Symantec's MTD (Dkt. No. 22) at 20. Nor does he include such allegations in the FAC. As a result, SBA claim fails as to the Beyer Third Software.

The FAC also fails to allege that title passed for the Beyer Second Software or the Cheslow First and Second Softwares *in California*. It does not plead that either Plaintiff was in California at the time of purchase. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015) (Chen, J.) (rejecting SBA claim by California resident who did not allege purchases in California). It alleges only that, for those online purchases, Symantec processed financial information "through its website" and "provided . . . a download link for electronic delivery of the . . . software." FAC ¶¶ 22, 27.[9] Symantec acknowledges the line of cases holding that online purchases of products are subject to the shipment/delivery contract provision of the Commercial Code. *See, e.g., In re Seagate Tech. LLC Litig.*, No. 16-cv-0523-JCS, 2017 WL 3670779, at *16 (N.D. Cal. Aug. 25, 2017). But as noted in the MTD Order, even under those cases, Plaintiffs still must allege that Symantec "shipped" the product to plaintiffs *from California*. MTD Order at 18; *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010) (rejecting allegation that SBA covered online order from California corporation), *vacated in part on other grounds on reconsideration*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011). This Court concluded that required allegation was missing from the original Complaint, and it remains absent from the FAC for both Plaintiffs. *See Calif. State Elecs. Ass'n v. Zeos Int'l. Ltd.*, 41 Cal. App. 4th 1270, 1276-1277 (1996) (dismissing SBA claim where title passed in Minnesota upon shipment from there for telephone purchases by California residents).

---

[9] Plaintiffs' reliance on the California choice of law provision is unavailing. *Id.* at ¶¶ 22, 27. The choice of law provision has no bearing on the *purchase* location.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      Plaintiffs' UCL Claim Should be Dismissed for Failure to State a Claim**

Plaintiffs' UCL claim should be dismissed in its entirety because the FAC does not plead an unfair, fraudulent, or unlawful business practice.  First, for the reasons stated in Section II, Plaintiffs fail to plead fraud and so fail to satisfy the "fraudulent" prong of the UCL.

Second, because Plaintiffs predicate their claim under the "unlawful" prong on alleged violations of the CLRA, SBA, and FAL, this claim falls with the direct claims.  FAC ¶ 92; *see Coleman-Anacleto v. Samsung Elecs. Am., Inc*, No. 16-CV-02941-LHK, 2017 WL 86033, at *10 (N.D. Cal. Jan. 10, 2017) (UCL "unlawful" claim failed where it was premised on CLRA and SBA claims that failed).

Third, Plaintiffs' claim under the "unfair" prong is also deficient.  As the Court recognized in the MTD Order, Plaintiffs' "unfair" claim "relies on the same factual allegations as those underlying the 'unlawful' and 'fraudulent' claims, meaning it sounds in fraud and Rule 9(b) applies."  MTD Order at 18; *see In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *8 (N.D. Cal. 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).  Here, because Plaintiffs' "unfair" allegations (FAC ¶ 94) overlap entirely with Plaintiffs' claims under the "unlawful" and "fraudulent" prongs of the UCL, they fail for the same reasons provided above. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) (where the allegedly unfair practices "overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive").  Just as Plaintiff Beyer's Third Software claim failed to state an "unfair" claim in the original MTD Order because *it* failed to establish fraudulent or unlawful conduct, *all* of Plaintiffs' unfair claims should now be dismissed based on their failure to establish a fraudulent or unlawful claim.  *See* MTD Order at 18.[10]

---

[10] Apart from those overlapping allegations, Plaintiffs' "unfair" claim contains only conclusory allegation parroting the legal elements and fails to meet either substantive standard for pleading a claim under the "unfair" prong.  Symantec's purported "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867.  And under the *Cel-Tech* test, which looks for violation of "some legislatively declared policy or proof of some actual or threatened impact on competition," because Plaintiffs have failed to state a claim under the CLRA, SBA, and FAL, there is no risk of violating the public policies underlying those statutes. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999).

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**C.      Plaintiffs Fail to State a Claim for Quasi-Contract/Unjust Enrichment**

2  Plaintiffs' quasi-contract claim must also be dismissed because a "quasi-contractual

3  remedy is not intended to allow a purchaser of a good to salvage a product defect claim that [he]

4  cannot otherwise plead." *Haskins*, 2014 WL 2450996, at *4.  Here, Plaintiffs have failed to plead

5  their other claims and cannot reframe them as unjust enrichment to escape that fact.  *In re Arris*

6  *Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *10 (N.D. Cal.

7  Jan. 4, 2018) (unjust enrichment/quasi-contract claim, based on the same allegedly misleading

8  advertisements as UCL, FAL, and CLRA claims, also sounded in fraud, was subject to Rule 9(b),

9  and failed to satisfy Rule 9(b) for the same reasons that the UCL, FAL, and CLRA claims did);

10  *Swearingen v. Healthy Beverage, LLC*, No. 13-CV-04385-EMC, 2017 WL 1650552, at *4-5

11  (N.D. Cal. May 2, 2017) (Chen, J.) ("[A]ny claim for unjust enrichment fails for the same reason

12  that Plaintiffs' claims under the UCL, FAL, and CLRA fail . . . .").

13  In all events, Plaintiffs' quasi-contract claim is displaced by their express contract with

14  Symantec: the EULAs they accepted in connection with their purchases, and which the FAC now

15  acknowledges govern their obligations with Symantec.  *Id.*

16  **CONCLUSION**

17  For these reasons, Symantec respectfully requests that the Court dismiss all Counts of the

18  Complaint for lack of Article III standing, or in the alternative for failure to state a claim upon

19  which relief may be granted.

20

21  Dated:    December 21, 2018                    FENWICK & WEST LLP

22

23                                                        By: */s/ Laurence F. Pulgram*
                                                              Laurence F. Pulgram
24
                                                          Attorneys for Defendant Symantec Corporation
25

26

27

28