1   LAURENCE PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   TYLER NEWBY (CSB No. 205790)
    tnewby@fenwick.com
3   MOLLY MELCHER (CSB No. 272950)
    mmelcher@fenwick.com
4   CIARA N. MCHALE (CSB No. 293308)
    cmchale@fenwick.com
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94104
    Telephone:     415.875.2300
7   Facsimile:     415.281.1350

8   Attorneys for Defendant
    SYMANTEC CORPORATION
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14   MONTGOMERY BEYER, and LINDA          Case No.: 3:18-cv-02006-EMC
     CHESLOW, Individually and on Behalf of all
15   Others Similarly Situated,            **DEFENDANT SYMANTEC
                                           CORPORATION'S REPLY IN
16                    Plaintiff,           SUPPORT OF ITS MOTION TO
                                           DISMISS PLAINTIFFS' FIRST
17          v.                             AMENDED COMPLAINT**

18   SYMANTEC CORPORATION,                 Date:      February 14, 2019
                                           Time:      1:30 p.m.
19                    Defendant.           Dept:      Courtroom 5, 17th Floor
                                           Judge:     The Hon. Edward M. Chen
20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANT'S REPLY ISO MOTION TO
DISMISS PLAINTIFFS' FAC                                    Case No.: 3:18-cv-02006-EMC

1

## **TABLE OF CONTENTS**

2

**Page**

3   INTRODUCTION ................................................................................................. 1

4   ARGUMENT ...................................................................................................... 2

5   I.   PLAINTIFFS LACK ARTICLE III STANDING .................................................. 2

6   II.   PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED ........................................ 6

7        A.   Plaintiffs Fail to Identify Any False, Actionable, Non-Puffing
              Statement upon which They Relied .......................................... 6

8        B.   Symantec Did Not Have a Duty to Disclose .............................. 8

9
10   III.   PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR
            FAILURE TO STATE A CLAIM AS A MATTER OF LAW ........................ 10

11        A.   Plaintiffs Fail to State a Claim Under the Song-Beverly Warranty Act .............. 10

12             1.   Plaintiffs Fail to Establish the Software was Unfit for Ordinary
                    Use ....................................................................... 11

13
14             2.   Plaintiffs Fail to Establish They Purchased the Software in
                    California ............................................................... 12

15        B.   Plaintiffs Fail to State a Claim Under the UCL ................................ 14

16        C.   Plaintiffs Fail to State a Claim for Quasi-Contract/Unjust Enrichment ............. 15

17   IV.   CONCLUSION ........................................................................................ 15

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## TABLE OF AUTHORITIES

2
Page(s)

3 CASES

4 *Ambers v. Beverages & More, Inc.*,
   236 Cal. App. 4th 508 (2015) .................................................................................13
5

6 *Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ......................................................................3
7
*Cahen v. Toyota Motor Corp.*,
8  717 F. App'x 720 (9th Cir. 2017) ..................................................................... *passim*

9 *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................15

10 *Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ...................................................................................9
11

12 *Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) ..................................................................14

13 *Darling v. Green*,
   No. CV 12-362 PSG (SPX), 2013 WL 11323320 (C.D. Cal. Sept. 25, 2013) .......13
14

15 *Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................14

16 *Haskins v. Symantec Corp.*,
   No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014)....................15
17
*Haskins v. Symantec Corp.*,
18  No. 13-CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ..............14, 15

19 *Hauck v. Advanced Micro Devices, Inc.*,
   No. 18-CV-00447-LHK, 2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) .................12
20

21 *Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)........................................................................8, 9, 10, 15

22 *In re Actimmune Mktg. Litig.*, No. C 08–02376 MHP, 2009 WL 3740648 (N.D.
      Cal. Nov. 6, 2009),
23   *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ..................................................................14

24 *In re Apple Inc. Device Performance Litig.*,
   No. 18-md-02827-EJD, 2018 WL 2404986 (N.D. Cal. Oct. 1, 2018)..................7, 8
25

26 *In re Apple Processor Litig.*,
   No. 5:18-cv-00147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019) .............1, 2, 3, 4

27 *In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................11

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## TABLE OF AUTHORITIES
(Continued)

2

**Page(s)**

3
*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices and Prod. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................5

4

*In re LinkedIn User Privacy Litig.*,
5  No. 5:12-cv-03088-EJD, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ................................4

6
*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1138 (N.D. Cal. 2010), *vacated in part on other grounds on*
7  *reconsideration*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...........................................13

8
*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) .............................................................6, 7

9

*LivePerson, Inc. v. [24]7.ai, Inc.*,
10  No. 17-CV-01268-JST, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) ...................................6

11
*Long v. Graco Children's Prods. Inc.*,
  No. 13–cv–01257–WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ..............................11

12
*Maya v. Centex Corp.*,
13  658 F.3d 1060 (9th Cir. 2011).....................................................................5

14
*Norcia v. Samsung Telecommunications Am., LLC*,
  No. 14-CV-00582-JD, 2018 WL 4772302 (N.D. Cal. Oct. 1, 2018).................................9, 10

15

*Palmer v. Apple Inc.*,
16  No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016)............................15

17
*Papasan v. Dometic Corp.*,
  No. 16-CV-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) ..............................4

18

*Rutledge v. Hewlett-Packard Co.*,
19  238 Cal. App. 4th 1164 (2015) ...................................................................9

20
*Singh v. Google Inc.*,
  No. 16-CV03734-BLF, 2017 WL 2404986 (N.D. Cal. June 2, 2017)...............................14

21

*Taragan v. Nissan N. Am., Inc.*,
22  No. C 09-3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ...............................12

23
*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017)..................................................................8, 9

24

*Wilson v. Hewlett-Packard Co.*,
25  668 F.3d 1136 (9th Cir. 2012)...............................................................8, 9, 10

26 **RULES**

27 Fed. R. Civ. P. 8(a)...................................................................................10

28 Fed. R. Civ. P. 9(b) ..............................................................................9, 10, 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

FENWICK & WEST LLP
ATTORNEYS AT LAW

2

## <u>INTRODUCTION</u>

Plaintiffs' Opposition (Dkt. No. 63) ("Opp.") hammers away at allegations of dire *risks* of intrusions that never happened and never will.  In doing so, it pounds on the wrong nail.  For the purposes of this motion, the Court must accept as true Plaintiffs' allegations that serious vulnerabilities may have once existed in Symantec antivirus products.  But the Court must also accept both that Symantec fully repaired them years ago (First Amended Complaint ("FAC") ¶ 4), and that Plaintiffs cannot plead any adverse impact from them.  Plaintiffs cannot establish that they suffered any actual, concrete, particularized, non-hypothetical injury.  They have no answer to the Ninth Circuit's holding in *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017), that a mere allegation of "overpayment" is insufficient to establish standing in a case asserting a software vulnerability that has never manifested.  Indeed, this District recently reiterated the same conclusion, dismissing another Project Zero disclosure case in *In re Apple Processor Litig.,* No. 5:18-cv-00147-EJD, 2019 WL 79035, at *2 (N.D. Cal. Jan. 2, 2019) (hereafter "*Apple Processor*").  Plaintiffs' lack of standing, alone, dooms their case.

Plaintiffs' FAC fails for several other and often related reasons.  Plaintiffs' fraud claims under the Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL") fail because Plaintiffs cannot identify a false, actionable statement upon which they relied.  Further, Plaintiff cannot establish that Symantec had a duty to disclose the alleged vulnerabilities, which Plaintiffs admit did not pose a safety hazard.  In the absence of any allegation that the potential vulnerabilities interfered with Plaintiffs' successful use and renewal of their purchases, Plaintiffs fail to allege any physical impact on the central functioning of their software sufficient to impose such a duty.

Similarly, Plaintiffs' Song-Beverly Warranty Act ("SBA") claim fails because Plaintiffs, who used and repeatedly renewed their software without incident, fail to establish that the software was not reasonably suited for ordinary use.  Their inability to plead that they purchased the software in California is an independent bar to the SBA claim.  Plaintiffs' "unfair" UCL claim fails to establish any "unfair" business practice, and whatever "unfair" conduct it does identify overlaps with Plaintiffs' untenable fraud claims.  Plaintiffs' unjust enrichment claim is also

1    duplicative of and similarly fails with their other claims.

2          Symantec respectfully requests that this Court dismiss Plaintiffs' claims with prejudice.

3          **ARGUMENT**

4    **I.    PLAINTIFFS LACK ARTICLE III STANDING**

5          Plaintiffs' lack of standing is dispositive of the entire action.  Contrary to the Opposition's

6    assertion (at 6) that "general allegations of injury" are sufficient, the Supreme Court requires that

7    to establish standing "[a]t the pleading stage, the plaintiff must clearly allege facts demonstrating

8    each element" of a concrete, particularized, and actual injury that is neither speculative nor

9    hypothetical.  *Apple Processor*, 2019 WL 79035, at *2 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct.

10    1540, 1547 (2016)).  The FAC does not do so.

11          The present case is especially remarkable for the facts Plaintiffs cannot allege.  Plaintiffs

12    acknowledge that Symantec had closed the alleged vulnerabilities by September 19, 2016 (Opp.

13    at 1), before they could be exploited against Plaintiffs or anyone else.  Given this admission, it is

14    no exaggeration to say that Plaintiffs have alleged less by way of actual or potential injury than in

15    any of the cases cited in the parties' briefs—none of which involved an alleged defect that was

16    fully fixed before it ever manifested to anyone.  Here, Plaintiffs do not assert that they suffered

17    any intrusion or disruption of their computers, diminution in performance, reduction in resale

18    value, cost for repair, loss of use, or ongoing risk or threat of future intrusion.  Lacking any of

19    these potential indicia of actual diminution in value, Plaintiffs rely solely on the theory that they

20    "overpa[id]" or "would not have purchased" the product had they known of the alleged

21    vulnerabilities.  Opp. at 7.  But that *ipse dixit*, without more, cannot establish diminution in value

22    and cannot support standing when a product is not alleged to have malfunctioned even once.

23          The Ninth Circuit made clear in *Cahen* that dismissal for lack of standing is required when

24    "allegations that the [allegedly defective products] are worth less are conclusory and unsupported

25    by any facts."  *Cahen*, 717 F. App'x at 723.  The Opposition has no response to the Ninth

26    Circuit's decision.  It simply ignores it.  And in attempting to distinguish the district court's

27    dismissal, Plaintiffs ignore that the *Cahen* plaintiffs asserted and lost on precisely the same theory

28    of standing being asserted here: that had they known of the software's alleged vulnerability, "they

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  would not have purchased their [vehicles] or would not have paid as much as they did to purchase

2  them." *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 966 (N.D. Cal. 2015) (alteration in

3  original).  The *Cahen* decisions establish the rule that "when economic loss is predicated solely

4  on how a product functions, and the product has not malfunctioned, . . . something more is

5  required than simply alleging an overpayment for a 'defective' product."  *Id.* at 970; Symantec's

6  Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 61) ("Motion") at 9-11.

7         Plaintiffs do not dispute that the FAC fails to plead "something more" than the bare

8  conclusions that they "overpa[id]" for or "would not have purchased" the product.  Opp. at 7-8.

9  Instead, they assert that they are exempt from that requirement because they are not asserting a

10  diminution in resale value due to the "market effect" of the risk of future malfunction.  *Id.* at 9.

11  By Plaintiffs' theory, the necessity of pleading facts to substantiate an overpayment claim is

12  unnecessary *except* where a party is claiming such potential reduction in resale value.  *Id.* at 10.

13  Plaintiffs have it backwards.  Pleading facts showing a real decline in market value—or,

14  alternatively, facts showing an imminent risk of hacking or malfunction, or facts showing

15  degradation of performance—are among the potential ways to add the "something more" needed

16  to substantiate a bare claim of "overpayment."  *See Cahen*, 147 F. Supp. 3d at 970.  That there is

17  no resale market for Plaintiffs' purchases does not immunize Plaintiffs from having to allege

18  some facts showing actual, concrete, non-hypothetical injury.

19         Judge Davila's recent decision in *Apple Processor* cements this principle, again in a case

20  alleging that a design defect created vulnerability to hacking.  There, purchasers sued Apple for

21  failing to disclose allegedly defective designs that Project Zero uncovered and reported to have

22  rendered Apple's CPUs vulnerable to the catastrophic "Spectre" and "Meltdown" exploits.  *Apple*

23  *Processor*, 2019 WL 79035, at *1-2.  Though Apple had released a patch, plaintiffs cited reports

24  that it substantially degraded performance and was only partially effective.  *Id.* at *3.  The court

25  dismissed for lack of standing because plaintiffs had failed to allege that their devices were ever

26  infiltrated or that *they* had downloaded the update or individually suffered degradation.  *Id.* at *3-

27  5.  Relying on *Cahen*, the court flatly rejected plaintiffs' argument that merely alleging the

28  "overpaying for goods based upon alleged misrepresentations by a manufacture satisfies the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   injury-in-fact requirement for Article III." *Id.* at *4.

2         Like the plaintiffs in *Cahen*, Plaintiffs here do not allege facts to show their iDevices
        are worth less than what they paid for them. . . . Plaintiffs do not allege that

3       Meltdown and Spectre posed such an immediate risk that they were forced to replace
        or discontinue use of their iDevices.  Nor do Plaintiffs allege that they were forced

4       to replace or discontinue use of their iDevices due to the alleged degradation in
        performance.  Instead, Plaintiffs assert conclusory allegations that they "would not

5       have purchased [their] iDevices or paid the prices they did."  Therefore, the court
        rejects Plaintiffs' diminution in value argument.

6

7   *Id.* at *5 (alterations in original and added).  Notably, the lack of injury in the present case is even

8   more compelling than in *Apple Processor*.  Here, there is no allegation of any continuing

9   vulnerability, nor of any degradation of performance by the curative updates that Symantec

10  issued.

11        In contrast to *Cahen* and *Apple Processor*, none of the decisions that Plaintiffs rely on

12  involve—much less approve of—standing to sue based on undisclosed design defects that

13  allegedly created vulnerability to hacking.  Plaintiffs refer to a pre-*Cahen* decision by Judge

14  Davila that distinguished the "something more" requirement as applicable to product defect cases

15  rather than to false labeling cases.  *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-03088-EJD,

16  2014 WL 1323713 (N.D. Cal. Mar. 28, 2014).  But the present case does allege a design defect.

17  In any event, the *LinkedIn* decision has been eclipsed by Judge Davila's post-*Cahen* ruling in

18  *Apple Processor* on facts far more resonant with this action.

19        Plaintiffs' references to *Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2017 WL

20  4865602 (N.D. Cal. Oct. 27, 2017) are puzzling.  Opp. at 9.  That case followed *Cahen*.  *See*

21  Motion at 11.  Without limiting its holding to economic or "market effects," *Papasan* held that

22  conclusory allegations of overpayment cannot establish standing; something more specific was

23  required.  2017 WL 4865602, at *6-7.  It dismissed because the plaintiff failed "to articulate any

24  particularized facts showing that she suffered tangible losses—economic, functional or

25  otherwise—from having purchased an allegedly defective Dometic refrigerator."  *Id.* at *6.

26  Indeed, because Ms. Papasan, like Plaintiffs Beyer and Cheslow here, had "at all times used [their]

27  product] for the purpose for which it was intended without any apparent problem," (*id.* (internal

28  quotation marks omitted)), they all lacked ability to assert that they did not get the value they paid

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    for.

2        *Maya v. Centex Corp.*, 658 F.3d 1060, 1065-66 (9th Cir. 2011), did not involve a software

3    vulnerability or any other product defect that failed to manifest.  It involved misrepresentations

4    and concealments by developers who, while representing they were building stable family

5    neighborhoods, were actually selling and financing homes to persons at high risk of foreclosure

6    and abandonment.  This caused "a substantial loss of value to [plaintiffs'] surrounding homes"

7    that "drastically altered the desirability of their properties."  *Id.* at 1066.  To be sure, the Ninth

8    Circuit framed its ruling in terms of plaintiffs' standing to recover where they paid more for their

9    homes than they were worth.  But it did so in the context of specific factual allegations

10   substantiating diminution of value to owners duped out of their lifetime's investments as their

11   neighborhoods crumbled.  No similar facts showing actual diminution in value exists here—just

12   hypothetical exposure to risks that never occurred.  Again, Plaintiffs have no answer to the

13   distinction between the Ninth Circuit cases that rely on a diminution in value theory where there

14   are actual factual allegations of such, and cases that reject that theory where all that is alleged is a

15   potential vulnerability that never manifested.  Motion at 8, n.3.

16       Finally, Plaintiffs selectively quote from *In re Chrysler-Dodge-Jeep Ecodiesel Mktg.,*

17   *Sales Practices and Prod. Liab. Litig.* ("*EcoDiesel*"), 295 F. Supp. 3d 927 (N.D. Cal. 2018),

18   ignoring the key distinguishing features explained in Symantec's Motion (at 10-11).

19   *EcoDiesel*'s discussion of why *Cahen* did not control in that case shows exactly why *Cahen* does

20   control here.  *EcoDiesel* recognized that, in *Cahen*, "the Ninth Circuit concluded that the

21   plaintiffs' overpayment allegations were 'conclusory and unsupported by any facts.'"  *Id.* at 950.

22   *EcoDiesel* expressly recognized that "something more" is required when a plaintiff only alleges

23   that software "*could* be hacked in the future," and when "the product has *not malfunctioned*."  *Id.*

24   (emphases in original).  By contrast, *EcoDiesel* itself involved vehicles that all were already

25   malfunctioning by failing to deliver the promised low emission/high torque that had been the

26   cornerstone of their value.  *EcoDiesel* included "concrete allegations of a *current universal*

27   vehicle defect [which] plausibly and specifically support an overpayment theory of injury" (*id.*)

28   distinguishing that case from the bare allegation of overpayment in *Cahen* and here.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    In sum, this Motion assumes that the software at one time had vulnerabilities, and that

2    Plaintiffs would not have purchased it had they known.  But if true, that could establish only

3    causation.  To have standing, Plaintiffs must also plead actual, concrete facts, not hypotheses,

4    establishing that their software was not worth what they paid for it.  No such facts exist here.

5    Hence this Court lacks Article III standing and must dismiss.

6    **II.    PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED**

7

8    **A.    Plaintiffs Fail to Identify Any False, Actionable, Non-Puffing Statement upon which They Relied**

9    Plaintiffs' affirmative misrepresentation claims fail because (1) all of the statements that

10   Plaintiffs allege they reviewed prior to purchase constitute non-actionable puffery, and (2) even if

11   Plaintiffs could provide a non-puffing statement upon which they relied (they do not), they fail to

12   establish that such statement is false.  *See* Motion at 13-18.

13   Plaintiffs agree (Opp. at 13), that to be actionable, a statement must be a "specific and

14   measurable claim, capable of being proved false or of being reasonably interpreted as a statement

15   of objective fact."  MTD Order at 7-11.  As outlined in the Motion (at 13-17), Plaintiffs fail to

16   identify any specific, measurable claims that are false.  Plaintiffs argue only that "industry-

17   leading" is actionable.  Opp. at 13-14.  Plaintiffs fail to address the remaining statements upon

18   which they purportedly relied and thus concede that they constitute non-actionable puffery that is

19   not false.

20   Plaintiffs argue that, in the full context of Symantec's representations, "industry-leading"

21   is not puffery.  *Id.* at 13-15.  Yet, Plaintiffs fail to identify any specific, actionable representations

22   made along with the "industry-leading" statement.  That distinguishes this case from *L.A. Taxi*

23   *Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015) where "industry-leading"

24   appeared amongst numerous other measurable representations that included "'specific'

25   assertions" and comparisons that "describe[d] 'absolute characteristics' of Uber's services that

26   could be tested."  *Id.* at 861.  Plaintiffs here do not identify any such quantifiable, specific

27   assertions that describe absolute or measurable characteristics of Symantec's products.  And

28   Plaintiffs' reliance on *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-CV-01268-JST, 2018 WL

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   5849025, at *5 (N.D. Cal. Nov. 7, 2018) is misplaced for the same reason.  Opp. at 13-14.

2   Plaintiffs identify no statement, which in the context of other challenged statements, conveys a

3   message about the software, which states an objective and measurable fact.

4          Plaintiffs nonetheless argue that the term "industry-leading" is "contextualized" by the

5   alleged representation that Symantec's software is "award-winning."  Opp. at 14.  This argument

6   is baseless.  As an initial matter, Plaintiffs fail to explain *how* the "award-winning" representation

7   "contextualize[s]" "industry-leading" such that it no longer constitutes non-actionable puffery.

8   Second, "award-winning protection" is itself non-actionable puffery.  Motion at 17.  Plaintiffs cite

9   no cases to the contrary.  Third, even if "award-winning" could ever be actionable, there is no

10  allegation that such representation is false here.  *In re Apple Inc. Device Performance Litig.*, No.

11  18-md-02827-EJD, 2018 WL 4772311, at *15 (N.D. Cal. Oct. 1, 2018).  As Plaintiffs point out,

12  Symantec did win awards, and it listed them.  Opp. at 14:7-9; *see also* Exh. A to the Declaration

13  of Molly Melcher in Support of Defendant Symantec Corp.'s Motion) (Dkt. No. 61-2).  To the

14  extent that the "award-winning" representation could provide "additional details [that] provide the

15  basis for a specific and measurable claim," Opp. at 14:20, that is a claim that the parties agree to

16  be *true*, and that cannot render "industry-leading" false.  Indeed, if the plaintiff in *L.A. Taxi* had

17  admitted that Uber's claim to having "the strictest safety standards" was actually true, could that

18  true claim then have rendered Uber's claim that it was also "industry leading" actionable?  Of

19  course not.

20         Plaintiffs' argument that a consumer might infer "award-winning" meant "industry best

21  practices" fails for the same reason that "industry-leading" cannot be reinterpreted to mean "best

22  practices."  *See* Motion at 16-17.  Moreover, the FAC fails to allege that *Plaintiffs* interpreted

23  "award-winning" or "industry-leading" to mean "best practices."  *See generally* FAC.  In all

24  events, as described in detail in the Motion, a claim of "best practices" is also puffery.  Motion at

25  16-17.  For all these reasons, Plaintiffs cannot convert the amorphous, ambiguous claim of

26  "industry-leading" into a provable, actionable claim, even hypothesizing that some customer

27  might infer it meant "best practices."  *Id.* at 16.  The term is simply too indeterminate to be relied

28  upon, as a matter of law.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Plaintiffs lastly fail in arguing that "industry-leading" is rendered actionable by the

2   alleged representation that consumers would receive "automatic updates."  Opp. at 9; FAC ¶¶ 22,

3   23.  First, this Court already concluded that "automatic updates," like other general product

4   descriptions, is non-actionable.  MTD Order at 11:10-16; *see also* Motion at 14:1-10.  Second, the

5   FAC makes no allegation that Symantec failed to deliver, as it represented, "automatic updates"

6   for newly discovered viruses or malware.  The packaging states only that "[a]s long as your

7   subscription remains active, you will automatically receive security updates and new product

8   features."  FAC at 14.  Plaintiffs do not allege that Symantec made any mention of third-party

9   source code, much less of patches for it.  *See* FAC.  And Plaintiffs admit that Symantec did

10  automatically issue updates for the alleged vulnerabilities once Project Zero reported them.  *Id.* at

11  ¶ 4.  Finally, Plaintiffs do not even attempt to explain how such general representations could

12  make "industry-leading" actionable or provide a basis to sue on the alleged "High Privilege

13  Defect."  *See generally* Opp.  Nor could they.

14  Because the FAC fails to allege any non-puffing representations, or any actual falsity,

15  Plaintiffs' affirmative misrepresentation claims should be dismissed.

16  **B.      Symantec Did Not Have a Duty to Disclose**

17  Plaintiffs' omission claims fail both because the alleged omissions are not contrary to any

18  affirmative misrepresentation, and because Symantec had no duty to disclose the alleged

19  vulnerabilities.  *In re Apple Inc. Device Performance Litig.*, 2018 WL 4772311, at *15.[1]

20  Under *Wilson*, a manufacturer's duty to consumers is limited to its warranty obligations or

21  a "safety issue."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012); *Williams*

22  *v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017).  And under *Hodsdon v. Mars, Inc.*,

23  891 F.3d 857 (9th Cir. 2018), in the case of a defect "which manifested itself during the warranty

24  period," a duty to disclose may exist for a "[physical] defect . . . central to the product's

25  function."  *Id.* at 862-64.  Here, Plaintiffs' omission claims fail because there is no allegation of a

26  safety issue or physical defect central to the product's function, much less one that manifested

27

28  [1] Plaintiffs do not dispute and thereby concede that, to the extent Plaintiffs' FAL claim is based on an omissions/failure to disclose theory, it fails as a matter of law.  *See* Motion at 18 n.7.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    during Symantec's limited warranty period.

2    Plaintiffs conclusorily assert that the defect need not render the product incapable of use.

3    Opp. at 18.  Yet, the *Hodsdon* court went to great pain to explain that *Wilson* remains good law.

4    891 F.3d at 864.  To comply with the *stare decisis* of *Wilson*, any incursion on its limitation of the

5    duty to disclose to safety issues may extend only so far as necessary to accommodate *Rutledge v.*

6    *Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015) and *Collins v. eMachines, Inc.*, 202 Cal.

7    App. 4th 249 (2011).  Thus, the *Hodsdon* court made clear that by "central functionality," it

8    meant defects of the severity of *Rutledge* and *Collins*, like "a computer chip that corrupts the hard

9    drive, or a laptop screen that goes dark," which in effect "*renders those products incapable of use*

10   *by any consumer.*"  *See Hodsdon*, 891 F.3d at 862-64 (emphasis added).  Such critical failures,

11   rendering the respective products incapable of use, are incomparable to the allegations here,

12   where no computer or software has been broken or failed to function.  Moreover, while no

13   degradation in function has been alleged here, either, if mere degradation, as opposed to

14   incapacitation, were sufficient to establish a duty to disclose, the exception would swallow

15   *Wilson*'s rule: this could create and impose an affirmative duty to disclose any issue that might

16   conceivably detract from the future performance of any product.

17   Plaintiffs argue that "there is no basis for Symantec's assertion that the lack of an

18   intrusion or malfunction" is evidence that the defect was not central to the product's function.

19   Plaintiffs' unsupported assertion is contrary to logic.  It also ignores the Ninth Circuit's standard

20   in *Williams*, 851 F.3d at 1028 (duty to disclose defect must rest on "more than merely

21   'conjectural and hypothetical'" injuries).  Motion at 20.  Where the product worked as advertised

22   for more than a decade with no alleged incidents, and was admittedly repaired before any impact

23   on the product's function, there is no source of facts or inference satisfying Rule 9(b)

24   requirements sufficient to impose a duty to disclose.  *See id.* at 19-20.

25   Plaintiffs misplace their reliance on *Norcia v. Samsung Telecommunications Am., LLC*,

26   No. 14-CV-00582-JD, 2018 WL 4772302 (N.D. Cal. Oct. 1, 2018), which was not a software

27   vulnerability case, but involved Samsung's "intentional[] program[ing of] the Galaxy S4 to fool

28   benchmark apps and to create false perceptions regarding the speed and performance of these

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    devices." *Id.* at *1.  In *Norcia*, unlike here, there were concrete allegations of diminished

2    performance on precisely the benchmarks Samsung allegedly designed the devices to deceive. *Id.*

3    at *1-2.[2]

4         Recognizing that the failure to allege any manifestation of the alleged vulnerabilities may

5    doom their omission claims, Plaintiff Beyer now attempts to rely on what the Opposition calls a

6    "hard drive failure" coinciding with his Fifth Software Purchase.  Opp. at 18; *compare* FAC ¶ 24.

7    This Fifth Purchase, for which he received a refund, is irrelevant.  As the FAC specifies, it is not

8    at issue in this action.  *See id.* at ¶ 24 n.21.  Nor is there any allegation whatsoever that the alleged

9    "hard drive failure" was associated with the alleged vulnerabilities or any exploitation thereof.

10   *See id.* at ¶ 24; *see also generally* Opp.[3]

11        Plaintiffs' citation to an online forum is also futile.  Opp. at 18.  Plaintiffs casually refer to

12   a forum for Norton Products that contains *over 98,000 threads relating to dozens of products*,

13   including those not at issue in this case and outside of the class period.  FAC ¶ 39 n.61

14   (purporting to characterize the content of the forum without any cite to any particular issue).

15   Plaintiffs do not attempt to establish a connection between a single post and the alleged

16   vulnerabilities.  Plaintiffs' allegation is not close to meeting the requirements of Rule 8(a), much

17   less those of Rule 9(b).

18        For these reasons and those identified in the Motion, Plaintiffs' fraud claims fail.

19   **III.   PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED FOR FAILURE**
20          **TO STATE A CLAIM AS A MATTER OF LAW**

21        **A.   Plaintiffs Fail to State a Claim Under the Song-Beverly Warranty Act**

22        The Opposition still fails to demonstrate that the software (1) was unfit for the ordinary

23   purpose for which it was used, and (2) was purchased by Plaintiffs at retail in California.  The

24   SBA claim therefore fails on each of these two grounds.

25   _____

26   [2] To the extent that *Norcia* implies a duty to disclose a defect causing mere degradation of a
     product, we note that no degradation is alleged here and also respectfully submit that would not
     afford proper respect to *Wilson* and the cases analyzed in *Hodson*.

27   [3] It is telling that Plaintiffs, in this second round of briefing on a second complaint, raise this idea
     for this first time.  If Plaintiffs believed that the hard drive failure was a manifestation of the
28   exploits, they would have so alleged.  They did not.  *See generally* FAC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 1.     Plaintiffs Fail to Establish the Software was Unfit for Ordinary Use

The Opposition points to no facts in the FAC to support a claim that these software products lacked even the most basic degree of fitness for ordinary use.  It suggests that "Plaintiffs have put forth specific details about the alleged defects and the resulting vulnerabilities," Opp. at 21, but cites to paragraphs that bear no relation to the functioning during Plaintiffs' use.  Instead, those paragraphs include high-level allegations regarding the potential severity of the alleged vulnerabilities, as assessed by Project Zero and as scored under the Common Vulnerability Scoring System.  FAC ¶¶ 32, 34.  These are descriptions of potential vulnerabilities in the abstract.  The FAC lacks any allegation that the products Plaintiffs used did not perform as expected or were otherwise unfit for ordinary use.  The FAC establishes quite the opposite, that both Plaintiffs used those products consistent with their ordinary use for years, repeatedly purchasing renewals.  *Id.* at ¶¶ 22-26.  Plaintiffs do not allege that their devices suffered from viruses, spyware, or other malware, let alone that the alleged vulnerabilities permitted such attacks.[4]

Plaintiffs' allegations are distinguishable from those this Court discussed in *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1109-10 (N.D. Cal. 2015) relating to the defective seatbelt buckle in *Long v. Graco Children's Prods. Inc.*, No. 13–cv–01257–WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013).  Opp. at 21-22.  In *Long*, the plaintiff alleged that the buckle of the car seat *he purchased* was "unreasonably difficult or impossible to unlatch," that he had to cut his child out of it with a knife, and that another car seat he subsequently purchased from the defendant suffered the same defect.  2013 WL 4655763, at *1.  The *Long* plaintiff did not rely solely on allegations the car seat product line at issue bore potential risks; he instead alleged that the specific car seats he bought did not work.  *Id.*  Here, unlike in *Long*, Plaintiffs have not alleged that their software failed to perform as expected.

The facts of this case more closely resemble those in *Hauck v. Advanced Micro Devices,*

---

[4] At most, Plaintiff Beyer alleges in passing that he experienced "considerable slowdown of his operating system," "suspecting a virus" at some unspecified time after installing products he returned and for which he was fully refunded and seeks no recovery here.  *Id.* ¶ 24, n.21.  This allegation is irrelevant and insufficient.

1   *Inc.*, No. 18-CV-00447-LHK, 2018 WL 5729234, at *1 (N.D. Cal. Oct. 29, 2018).  There the

2   allegations did not, as Plaintiffs suggest, relate only to "the effect of security vulnerabilities on

3   processor speeds and efficiencies."  Opp. at 22.  The *Hauck* plaintiffs alleged that the defendant's

4   central processing units contained "cybersecurity flaws exposing the processors to attack" by the

5   Spectre exploit.  *Hauck*, 2018 WL 5729234, at *1.  The plaintiffs defined the defect as "20 years

6   of serious security vulnerabilities . . . which allows hackers to steal sensitive data."  *Id.* at *5

7   (internal quotation marks omitted, alterations in original).  In dismissing plaintiffs' SBA claim,

8   the court concluded that "whether the Defect is Spectre, security vulnerabilities created by

9   AMD's design, or 20 years of serious security vulnerabilities, . . .  the CAC contains no allegation

10  that the basic functionality of the processors has been compromised by the Defect . . . fail to work

11  at all, or fail to work even a majority of the time."  *Id.* at *8 (internal quotation marks omitted).

12  That the plaintiffs alleged that *patches to fix* the alleged vulnerabilities decreased processor speed

13  was thus tangential to the core allegation which the court rejected: that a *potential* vulnerability

14  rendered the CPUs unfit for their ordinary purpose.

15      Like in *Hauck*, Plaintiffs here claim that alleged vulnerabilities exposed them to serious

16  security vulnerabilities, without alleging that Plaintiffs' products or data were compromised in

17  any way.  *See also Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *1

18  (N.D. Cal. June 20, 2013) (dismissing SBA claim where plaintiffs alleged a vehicle defect could

19  result in the vehicle rolling away but where no plaintiffs experienced a rollaway).  Plaintiffs'

20  allegations of unfitness mirror those in *Hauck* and *Taragan* and similarly fail.

21          **2.      Plaintiffs Fail to Establish They Purchased the Software in California**

22      Independently, the Opposition fails to identify allegations in the FAC establishing that

23  Plaintiffs purchased their products at retail in California, as required under the SBA.  Plaintiff

24  Beyer concedes his Third Software purchase did not occur at retail in California.  Opp. at 20 n.4.

25  Plaintiffs' SBA claim therefore rests on online purchases of the Beyer Second Software and the

26  Cheslow First and Second Softwares.  FAC ¶¶ 22, 25-27.

27      The parties agree that Plaintiffs' claim rests on the following allegations: (1) Symantec's

28  principal place of business is in California; (2) Symantec's EULAs invoke California and "do not

FENWICK & WEST LLP
ATTORNEYS AT LAW

provide any terms and conditions that would contravene the presumption of a shipment contract

under California law"; and (3) Plaintiffs' online purchases were completed when Symantec

processed their financial information and provided a link to download the software. *Id.* at ¶¶ 22-

27; Opp. at 20.  But these allegations remain insufficient, because Plaintiffs never allege that the

acts underlying completion of Symantec's performance occurred *in California*.  MTD Order at

18.  At most, Plaintiffs allege Symantec has a presence in California and, separately, that

Symantec completed the purchase through its website.  *Id.*  Plaintiffs fail to connect these facts so

as to place Symantec's actual actions in completing the purchase in California as the SBA

requires.

In an attempt to cure this deficiency, Plaintiffs cite to two cases to suggest that

Symantec's EULAs provide a basis for concluding that the purchase at issue occurred in

California.  *See* Opp. at 19-20 (citing *Darling v. Green*, No. CV 12-362 PSG (SPX), 2013 WL

11323320, at *1 (C.D. Cal. Sept. 25, 2013) and *Ambers v. Beverages & More, Inc.*, 236 Cal. App.

4th 508, 516 (2015)).  Both cases miss the point.  In both *Darling* and *Ambers*, the courts assessed

whether contracts underlying product purchase *qualified as shipment or delivery contracts under

California law*, so as to determine where title to the product passed.  *Darling*, 2013 WL

11323320 at *6 (concluding, despite contract's ambiguity, that the parties entered into a shipment

contract, under which title passed in Arizona when the plaintiffs inspected the vehicle and left an

initial payment at the retailer in Arizona); *Ambers*, 236 Cal. App. 4th at 515-516 (holding that the

defendant's website terms and conditions were delivery contracts providing that title passed to the

purchaser at the time her credit card was charged).  Here, the issue is not whether the EULAs

qualify as a delivery or shipment contract.  Rather, assuming, as Plaintiffs argue, that the EULAs

*are* shipment contract such that title to the software passed at the time Symantec processed

Plaintiffs' payments, Plaintiffs *still* have not alleged titled passed in California.  As this Court has

recognized, assuming the EULAs are a shipment contract, Plaintiffs still must allege that

Symantec "shipped" the products—i.e. completed its performance—*from California*.  MTD

Order at 18; *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010)

(rejecting allegation that SBA covered online order from California corporation), *vacated in part*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   *on other grounds on reconsideration*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011).  The FAC still

2   lacks any such allegation, and the Court should therefore again dismiss the SBA claim.

3          **B.     Plaintiffs Fail to State a Claim Under the UCL**

4          Plaintiffs' UCL claims also fail.  Plaintiffs' claims under the "fraudulent" prong of the

5   UCL fail for the reasons stated above in Section II.  Additionally, the Opposition confirms that

6   their claims under the "unlawful" prong of the UCL are also predicated on their flawed

7   allegations that Symantec has violated the CLRA and FAL.  Opp. at 22.  The "unlawful" claims

8   thus also fail for the reasons provided above.

9          Nor has the Opposition saved the claims of an "unfair" practice under the UCL.  First,

10  Plaintiffs' "unfair" claims fail because they "overlap entirely" with the allegations of fraudulent

11  conduct by Symantec, and thus fail for the same reasons as the fraud claims.  *Hadley v. Kellogg*

12  *Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) (dismissing unfair prong UCL claim

13  where it overlapped entirely with plaintiff's fraud claim); *In re Actimmune Mktg. Litig.*, No. C

14  08–02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651

15  (9th Cir. 2011).[5]

16         Even if they did not entirely overlap, Plaintiffs' "unfair" claims also fail both substantive

17  tests courts apply to assess such claims.  Apart from the overlapping allegations, Plaintiffs'

18  "unfair" claims merely parrot the legal elements of those tests.  This is insufficient.  Under the

19  balancing test,[6] absent an affirmative misrepresentation or any legal duty to disclose product

20  characteristics, Plaintiffs cannot identify any conduct by Symantec that "offend[s] an established

21  public policy" and is "immoral, unethical, oppressive or unscrupulous and causes injury to

22

23  [5] Plaintiffs' reliance on *Haskins* to suggest their unfair claims do not overlap entirely with their
    fraud claims is misplaced.  *See* Opp. at 23 (citing *Haskins v. Symantec Corp.*, No. 13-CV-01834-
24  JST, 2013 WL 6234610, at *8 (N.D. Cal. Dec. 2, 2013)).  In *Haskins*, the Court dismissed the
    entirety of the UCL and FAL claims under its Rule 9(b) analysis, and the Ninth Circuit affirmed.
25  *Id.* at *7.  The court's subsequent analysis of the UCL claim is dicta and, in view of the court's
    dismissal of that entire complaint, does not support a conclusion that Plaintiffs' unfair prong
26  claim can survive here.

27  [6] Contrary to Plaintiffs' assertions that the balancing inquiry "is not suited for the motion to
    dismiss stage," courts frequently grant motions to dismiss even after engaging in this balancing
28  inquiry.  *See, e.g.*, *Singh v. Google Inc.*, No. 16-CV03734-BLF, 2017 WL 2404986, at *4 (N.D.
    Cal. June 2, 2017); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012).

FENWICK & WEST LLP
ATTORNEYS AT LAW

consumers" that outweighs any potential benefit. *Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *6 (N.D. Cal. Apr. 15, 2016); *Hodsdon*, 891 F.3d at 867 (dismissing "unfair" claim on the pleadings because a "failure to disclose information [defendant] had no duty to disclose in the first place is not substantially injurious, immoral, or unethical").[7]

Similarly, under the *Cel-Tech* test, while Plaintiffs make conclusory claims that Symantec's conduct violates public policy underlying the CLRA, SBA, and FAL, neither the FAC nor Opposition identify any specific policy that could extend the reach of these statutes where, as here, Symantec has not violated their terms by any actionable misrepresentations or omissions. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). The Court should dismiss Plaintiffs' UCL claims.

### C.   Plaintiffs Fail to State a Claim for Quasi-Contract/Unjust Enrichment

The Opposition does not refute that Plaintiffs cannot assert a quasi-contract claim to "salvage a product defect claim that [they] cannot otherwise plead." *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2014 WL 2450996, at *4 (N.D. Cal. June 2, 2014). Even assuming the FAC sufficiently pleads reliance (and it does not), Plaintiffs have failed to plead the other elements of their claims, including any actionable misrepresentation or omission. Their quasi-contract claim predicated on those claims thus also fails. *See* Motion at 25.

## IV.   <u>CONCLUSION</u>

For these reasons and those in the Motion, Symantec respectfully requests that the Court dismiss all Counts of the Complaint for lack of Article III standing, or in the alternative for failure to state a claim upon which relief may be granted.

Dated:   January 25, 2019          FENWICK & WEST LLP


By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram

    Attorneys for Defendant Symantec Corporation

---

[7] Plaintiffs' again rely incorrectly on *Haskins* to suggest that their alleged overpayment for the software constitutes harm sufficient to satisfy the balancing test. Opp. at 23. The language Plaintiffs rely on is dicta and predates *Cahen*, which, as discussed above, reaches the opposite conclusion and defeats Plaintiffs' claims here.

FENWICK & WEST LLP
ATTORNEYS AT LAW